The SOUTH BEND FEDERATION OF TEACHERS, Indiana Education Employment Relations Board, Victor P. Hoehne, Cleon H. Foust, Jr., George Gardner, Appellants (Defendants Below),

v.

NATIONAL EDUCATION ASSOCIATION—SOUTH BEND, Appellee (Plaintiff Below).

No. 2–677 A 222.

Court of Appeals of Indiana, Second District.

April 25, 1979.

Rehearing Denied July 3, 1979.

Leonard Opperman, Hopper & Opperman, Indianapolis, for appellant, South Bend Federation of Teachers.

Theodore L. Sendak, Atty. Gen., William G. Mundy, Deputy Atty. Gen., Indianapolis, for appellants, Indiana Education Employment Relations Board, Victor P. Hoehne, Cleon H. Foust, Jr., George Gardner.

Wayne O. Adams, III, Richard J. Darko, Bingham, Summers, Welsh & Spilman, Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendants-Appellants, The South Bend Federation of Teachers (the Federation)

and the Indiana Education Employment Relations Board (the Board) appeal from an injunction prohibiting the Board from holding an election to determine whether the Federation or NEA–South Bend is entitled to exclusively represent the employees of the South Bend Community School Corporation (the School Corporation), claiming the trial court was without subject matter jurisdiction to grant the injunction, and that the 1972 Election Agreement entered into between NEA–South Bend, the Federation and the School Corporation is no longer a binding contract.

We affirm.

## CASE HISTORY

Originally this cause came to us as an appeal from an interlocutory order (the grant of a preliminary injunction). Because the substantive issues were thoroughly aired and the rights of the parties determined on the merits at the hearing on the preliminary injunction, we sent this case back to the trial court to finalize its order so as to avoid a second appeal.

## FACTS

In 1972 NEA–South Bend, the Federation and the School Corporation entered into an agreement (the 1972 Election Agreement) dealing with election procedures for determining the bargaining agent for teachers employed by the School Corporation. Among other things, that agreement established the procedures for an election to be held December 7, 1972, to determine the bargaining agent for teachers in the School Corporation. It further provided in Article 10 the procedure for challenging the winner of the 1972 election. Article 10 reads as follows:

10. *Period of Certification*

It is agreed by and between the parties hereto that the organization obtaining a majority of the valid ballots cast shall serve as the exclusive bargaining agent for the unit for the period beginning December 30, 1972 *until such time as a challenge is made in accordance with the procedures herein set forth*, provided that no subsequent election may be held before November 1, 1974.

A new election shall be held in the 60 day period preceding December 30, 1974 if petitions worded as follows are presented signed by 30% of the unit in the 30 day period which precedes the above mentioned 60 day period. It is agreed the challenging organization will pay the full cost incurred by the conductor of the election.

"I hereby authorize the organization circulating this petition to represent me in negotiations before the Board of Trustees concerning wages, hours, working conditions and all matters of professional concern and in doing so hereby request an election to determine the sole negotiating agent in the South Bend Community School Corporation." (emphasis supplied)

NEA–South Bend won the election on December 7, 1972, and has been the exclusive bargaining representative of the School Corporation ever since.

In 1973, the Indiana General Assembly enacted the Educational Employee Bargaining Act [1] (the Act), which sets forth procedures to be followed to obtain representation elections in public school corporations. Its requirements for obtaining a challenge election are less stringent in several respects than those set forth in the 1972 Election Agreement. Article 10 of the 1972 Election Agreement requires a challenging organization's petition to be signed by thirty percent of the teachers in the bargaining unit, whereas the Act requires that the petition be signed by only twenty percent of the teachers in the bargaining unit. Also, the 1972 Election Agreement sets out specific language to be used to authorize the challenging organization to represent the signer in the negotiations and requires a

---

1. Ind.Code 20–7.5–1–1 *et seq.* (1976).

request for an election to determine the negotiating agent. The Act, on the other hand, merely requires that the challenging organization assert the exclusive representative no longer represents the majority and does not require the petitions to request an election.

On March 5, 1974, NEA–South Bend requested the Board to certify it as exclusive representative of the school employees in the School Corporation. The Federation and the School Corporation opposed the NEA–South Bend's request. A hearing on the request was held June 13, 1974, the primary issue being whether the procedures set forth in the 1972 Election Agreement continued to be valid and binding in view of the enactment of the Act.

Because the 1972 Election Agreement predated both the enactment and effective date of the Act, the hearing examiner concluded *inter alia* that the United States and Indiana Constitutions precluded the Board from construing or applying the Act in such a way as to impair the rights and obligations established by the 1972 Election Agreement. In addition, he determined that the timetable for the presentation of a challenge set out in Article 10 of the 1972 Agreement merely stated a procedure for challenge to facilitate a desirable collective bargaining schedule and did not define a contingent event or contractual obligation of the parties. (See Appendix A) There-fore, he made the following recommendation:

### RECOMMENDED ORDER

#### (Question of Representation)

The hearing examiner recommends that the Indiana Education Employment Relations Board certify the National Education Association–South Bend as the exclusive representative of the school employees in the unit described in Section 2 of the 1972 Teachers Organization Election Procedure (Joint Exhibit # 2).

The recommended order in Case No. R–74–95–7205 is submitted this 14th day of November, 1974.

CHARLES R. RUBRIGHT
Charles R. Rubright,
Hearing Examiner

The full Board adopted his recommendation and certification was granted to NEA–South Bend on November 18, 1974. Thus it would appear that the Board not only determined the passage of the Educational Employee Bargaining Act did not affect the validity of the 1972 Election Agreement and that its terms prevailed, but also interpreted the challenge provision of the 1972 Election Agreement.[2]

Judicial review of this decision was not sought.

2. The Hearing Examiner found:

The Teacher Organization Election Procedure [1972 Election Agreement] is not a contract in which the parties have agreed to a selection procedure for an infinite period of time, but rather it is a contract by which a procedure is established to determine an exclusive representative for collective bargaining which is to be recognized by the parties for a period of time contingent upon the occurance [sic] of a specific event. Once that even occurs all the obligations of the parties are terminated except the obligations of the challenging organization to pay the costs of the subsequent election. . . . If that contingent event occurs the parties would no longer be contractually obligated to recognize the NEA–South Bend as the exclusive representative and accordingly the I.E.E.R.B. would no longer be constitutionally prohibited from finding that a question of representation ex-

ists and thereby proceeding with an election to determine the statutory exclusive representative.

The contingent [sic] event is the challenge to the NEA–South Bend's exclusive representation after October 1, 1974 by a teacher organization presenting petitions signed by 30% of the bargaining unit which authorize the organization circulating the petition to represent the signer in negotiations which also requests an election to determine the sole negotiating agent of the South Bend Community School Corporation. The hearing examiner concludes that the timetable for the presentation of the challenge notwithstanding the earliest date on which the challenge can arise is a matter of procedure in order to facilitate a desirable collective bargaining schedule instead of substantial matter defining the contingent event or defining any of the parties contractual obligations.

On February 2, 1977, the president of the Federation sent a letter to the chairman of the Board informing him that the NEA–South Bend no longer represented a majority of the teachers in the bargaining unit. The Board treated this letter as a petition by the Federation for a challenge election.

The Federation submitted Showing of Interest Petitions during the first week of March, 1977. A hearing was held before the full Board on March 23, 1977, at which time it was established that the Federation's petitions complied with the challenge requirements of the Act, but did not comply with the challenge requirements of the 1972 Election Agreement.

On March 25, 1977, the Board entered findings of fact and conclusions of law in favor of the Federation. (See Appendix B.) The effect of the Board's decision was to determine that the 1972 Election Agreement was to govern the 1972 election only and that elections subsequent to 1974 were under the relaxed requirements of the Act; and the Board ordered an election to be held under the provisions of the Act.

Then on March 30, 1977, NEA–South Bend filed a Verified Complaint in the Marion County Superior Court seeking a permanent injunction to enjoin the Board from exercising its jurisdiction over any representation or unit petitions in the School Corporation until the terms of the 1972 Election Agreement had been complied with.

A preliminary injunction was issued and on May 13, 1977, the trial court entered findings of fact and conclusions of law which, *inter alia*, reversed the Board by upholding the validity of the 1972 Election Agreement until a challenge was made in accordance with the procedures set out in Article 10. (See Appendix C.) The court found that NEA–South Bend could lose its status as the exclusive bargaining agent of the teachers, and would incur cash expenses of approximately $14,500 which could not

be recouped if forced to proceed with the election scheduled by the Board for May 19, 1977. It further found that the Board's decision of November 8, 1974, was a former adjudication on the issue of the validity and effect of the 1972 Election Agreement and that the decision of the Board dated March 25, 1977, should be barred by principles of res judicata and collateral estoppel. Therefore, it found that the action of the Board unconstitutionally impaired NEA–South Bend's contract rights contrary to the Indiana and United States Constitutions.

On August 1, 1978, the trial court entered final judgment [3] enjoining the Board from taking an action as to teacher representation contrary to the 1972 Election Agreement.

The Federation and the Board appeal.

### ISSUES

The errors alleged by the Federation and the Board may be resolved as two issues:

1. Did the trial court lack subject matter jurisdiction to issue the injunction;

 A. because NEA–South Bend did not seek judicial review by the method provided in the Administrative Adjudication Act, and;

 B. because NEA–South Bend did not exhaust its administrative remedies provided by the Administrative Adjudication Act?

2. Did the trial court err in holding that the Board's order unconstitutionally impaired the contractual rights of NEA–South Bend embodied in the 1972 Election Agreement?

*PARTIES' CONTENTIONS*—As to ISSUE ONE, the Federation and the Board maintain that NEA–South Bend circumvented the statutory procedure for judicial review of agency action provided for in the Administrative Adjudication Act (AAA). They contend that if the Board's order was a

---

**3.** The trial court's entry of final judgment makes unnecessary our consideration of the Federation's and the Board's arguments that NEA–South Bend did not suffer sufficient irrep-

arable injury to justify the grant of a preliminary injunction or that NEA–South Bend should have followed the stay provisions of the AAA (Ind.Code 4–22–1–17).

final agency order, the judicial review procedures provided in the AAA should have been followed. Alternatively, they assert that if the Board's action was merely an interim step, any judicial intervention was premature.

NEA–South Bend counters with the argument that the Board's order of March 25, 1977 was not a final order which would require it to follow the provisions for judicial review in the AAA, and that the futility of exhausting administrative remedies and certainty of irreparable harm excused it from exhausting administrative remedies.

As to ISSUE TWO, the Federation and the Board argue that the 1972 Election Agreement merely stated the procedure to govern an election challenging the exclusive representative of the School Corporation prior to December 30, 1974, and after that date, the Agreement expired. Because the 1972 Election Agreement is no longer in effect, they argue, it cannot be unconstitutionally impaired.

On the other hand, NEA–South Bend claims that the trial court's conclusion that the Board's order unconstitutionally impaired NEA–South Bend's contract rights is supported by the evidence. It further asserts that under the doctrine of res judicata, the November 14, 1974 determination by the Board on the issue of unconstitutional impairment of the 1972 Election Agreement is controlling in this case.

## DECISION

### ISSUE ONE

*CONCLUSION*—The trial court had subject matter jurisdiction to issue the preliminary injunction.

The Federation and the Board present alternative arguments in support of their contention that the trial court did not have subject matter jurisdiction to grant the injunction.

Firstly, they urge us to find that the Board's order of March 25, 1977 was a final order requiring NEA–South Bend to seek judicial review in accordance with the provisions for judicial review embodied in the

AAA (Ind.Code 4–22–1–14 (1976)). They argue alternatively that if we should find that the Board's order of March 25, 1977 was not a final order, NEA–South Bend should have been denied relief for having failed to exhaust its administrative remedies.

## FINALITY

■ The provision for judicial review in the AAA (Ind.Code 4–22–1–14 (1976)) reads in pertinent part:

Any party or person aggrieved by an order or determination made by any such agency shall be entitled to a judicial review thereof in accordance with the provisions of this act [4–22–1–1—4–22–1–30]. Such review may be had by filing with the circuit or superior court of the county in which such person resides, or in any county in which such order or determination is to be carried out or enforced, a verified petition setting out such order, decision or determination so made by said agency, and alleging specifically wherein said order, decision or determination is:

(1) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; or

(2) Contrary to constitutional right, power, privilege or immunity; or

(3) In excess of statutory jurisdiction, authority or limitations, or short of statutory right; or

(4) Without observance of procedure required by law[.]

However, the courts have interpreted this provision in such a way that it may be invoked only if the agency action complained of is a "final order." *State ex rel. Calumet National Bank of Hammond v. McCord* (1963), 243 Ind. 626, 189 N.E.2d 583; *Indiana Alcoholic Beverage Comm. v. McShane* (1976), Ind.App., 354 N.E.2d 259; *Downing v. Board of Zoning Appeals of Whitley County* (1971), 149 Ind.App. 687, 274 N.E.2d 542. Thus, if the Board's order of March 25, 1977 was a final order, NEA–South Bend erred by not petitioning for review according to the requirements of Ind.Code 4–22–1–14 (1976).

The Federation and the Board claim that the order was final because the full Board's conclusion that Article 10 of the 1972 Election Agreement was intended to apply only to elections held prior to December 30, 1974, determines once and for all NEA–South Bend's rights under the Agreement.

NEA–South Bend argues that though the Board's conclusion that the 1972 Election Agreement is no longer in effect causes it irreparable injury, the actual order issued by the Board is not a final order as required by Ind.Code 4–22–1–14 (1976).

The order reads:

> Therefore, based on the foregoing findings and conclusions, the IEERB orders the hearing examiner to proceed with the processing of the pending unit and representation petitions pursuant to Ind.Code 20–7.5–1 [20–7.5–1–1] and rules and regulations of the IEERB.

In *Downing, supra*, we defined final order as follows:

> "Final order" means an order ending the proceedings, leaving nothing further to be accomplished. *Noeding Trucking Co. v. U. S.* (D.C.1939), 29 F.Supp. 537. Consequently, an order is not final if the rights of a party involved remain undetermined or if the matter is retained for further action. *Houk v. Beckley* [161 Neb. 143, 72 N.W.2d 664] *supra.* Generally, judicial review is denied for lack of finality, if an action by an administrative agency is only anticipated. Review will also be denied when action has been taken if the matter is still pending final disposition of interim steps. *Boston & Maine R.R. Co. v. U. S.* (1958), 358 U.S. 68, 79 S.Ct. 107, 3 L.Ed.2d 34; *Delaware & Hudson Co. v. U. S.* (1924), 266 U.S. 438, 45 S.Ct. 153, 69 L.Ed. 369. 149 Ind. App. at 691, 274 N.E.2d at 544.

The order in question here does not end the proceedings, it merely orders the hearing examiner to proceed according to the statute, rules and regulations which require him to hold a unit determination hearing

and set a date for an election if one is required. Thus, the Board's order leaves much "further to be accomplished." The rights of the parties remain undetermined and will remain undetermined until after an election is held.

Even if we were inclined to find this a final order, we would be unable to in light of the Indiana Supreme Court's language in *IEERB v. Benton Community School* (1977), Ind., 365 N.E.2d 752, 755. In reviewing an almost identical factual situation,[4] the court said:

> Moreover, if Plaintiff had proceeded with the unit determination hearing, it would have been faced with the uncertainty of determining whether or not to seek a judicial review of the unit determination immediately after the hearing, only to be told that the unit determination was not a final order of the administrative agency, or whether to wait until after an election had been held to seek review.

Thus, the Supreme Court considers that even the unit determination—which is one step beyond what has occurred in this case—is not the final order of an administrative agency.

Therefore, we conclude that the Board's order of March 25, 1977, was not a final order and NEA–South Bend did not err by failing to follow the provisions for judicial review in the AAA.

## EXHAUSTION

The Federation and the Board argue alternatively that if the Board's order is *not* considered a final order making it subject to the judicial review provisions of the AAA, then judicial review was premature because NEA–South Bend failed to exhaust its administrative remedies. No so.

■ Indiana, like other jurisdictions, recognizes the need for unfettered action by administrative agencies within the sphere of their authority. AAA (particularly Sec-

---

4. The case dealt with school employees other than teachers, but the administrative procedure is identical.

tions 1, 3, and 14); *Uhlir v. Ritz* (1970), 255 Ind. 342, 264 N.E.2d 312; *Thompson v. Medical Licensing Board of Indiana* (1979), Ind.App., 389 N.E.2d 43 (No. 2–1076–A–395, Handed down April 25, 1979); *Indiana Alcoholic Beverage Comm. v. McShane, supra.* Flowing from this general statement of principle, bottomed on separation of powers, is the fundamental rule of administrative law that a person is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *State ex rel. Paynter v. Marion County Superior Court, Room No. 5* (1976), Ind., 344 N.E.2d 846; *City of East Chicago v. Sinclair Refining Co.* (1953), 232 Ind. 295, 111 N.E.2d 459; *State ex rel. Evansville City Coach Lines, Inc. v. Rawlings* (1951), 229 Ind. 552, 99 N.E.2d 597; *Illinois Central R. Co. v. Public Service Commission* (1947), 225 Ind. 643, 75 N.E.2d 900; *Brutus v. Wright* (1975), Ind.App., 324 N.E.2d 165; *State v. Frye* (1974), 161 Ind.App. 247, 315 F.2d 399. *See also Grutka v. Barbour* (1977), (7th Cir.) 549 F.2d 5; *Hooser v. Baltimore & Ohio Railroad Co.* (1960), (7th Cir.) 279 F.2d 197. Thus, until a party has exhausted administrative channels, a court is without jurisdiction to bestow equitable relief ("exclusive remedy" doctrine). *Public Service Commission v. City of Indianapolis* (1956), 235 Ind. 70, 131 N.E.2d 308; *Amburgey v. Miller* (1977), Ind.App., 362 N.E.2d 869; *Indiana Civil Rights Comm. v. Meridian Hills Country Club* (1976), Ind.App., 357 N.E.2d 5; *Decatur County R.E.M.C. v. Public Service Co.* (1971), 150 Ind.App. 193, 275 N.E.2d 857.

However, under certain exceptional circumstances, such as futility of exhaustion or certainty of irreparable harm, the exhaustion requirement is relaxed. *Wilson v. Review Bd. of Indiana Employment Security Div.*, Ind., 385 N.E.2d 438 (1979); *I.H.S.A.A. v. Raike* (1975), Ind.App., 329 N.E.2d 66; 73 C.J.S. *Public Administrative Bodies & Procedure* § 41 (1951); 2 K. Davis, Administrative Law Treatise § 20.07 (1958).

It is our opinion that in the case before us NEA–South Bend has demonstrated irreparable harm sufficient to excuse it from exhausting the administrative remedies. We are satisfied that it has gone as far as it can

go in the administrative process without suffering permanent and irreparable injury.

All the cases cited by the Federation and the Board deal with parties who have sought injunctive relief in *anticipation* of a possible future adverse decision by an agency. Exhaustion was required in each of these cases because without a determination adverse to its interests by the agency, a party cannot show irreparable injury sufficient to justify intervention by the courts.

In *State ex rel. Paynter v. Marion County Superior Court, Room No. 5, supra,* the question before the State Board of Health was whether a party was operating a health facility without a license. Before the agency made any determination as to whether the premises in question was a health facility, the party sought an injunction to prohibit future agency action.

In *Downing v. Board of Zoning Appeals, supra,* the protesting holders of real estate filed a writ of certiorari in the Circuit Court subsequent to the Board of Zoning Appeals' grant of preliminary approval of an application for a special exception to develop a mobile home park, final approval being contingent on the plans being finished and approved by appropriate agencies. Furthermore, no construction could be commenced until final approval was obtained.

In *Indiana Alcoholic Beverage Comm. v. McShane, supra,* the ABC resolved to re-evaluate certain of its rules and regulations and set a hearing for that purpose. McShane sought an injunction to prevent the hearing.

In *Indiana Civil Rights Comm. v. Meridian Hills Country Club, supra,* a complaint was filed with the Indiana Civil Rights Commission charging Meridian Hills Country Club with discriminatory employment practices. Meridian Hills filed a Motion to Dismiss, claiming it was not an employer within the meaning of the Indiana Civil Rights Act. The Motion to Dismiss was denied by the Commission. Before the Commission had determined whether Meridian Hills was an employer within the meaning of the Act, Meridian Hills applied

to the court for injunctive relief to prohibit the Civil Rights Commission from taking further action.

In each of the above cases, the court on appeal held injunctive relief was inappropriate because administrative remedies had not been exhausted. Had the agency proceedings been allowed to run their course in each case, a decision might have been made in favor of the parties seeking injunctive relief. In *Paynter*, the State Board of Health might have determined that the facility was *not* a health facility; in *Downing*, the mobile home park might not have obtained final approval from the zoning board; in *Indiana Alcoholic Beverage Comm. v. McShane*, the ABC might have decided *not* to change its rules and regulations; and in *Indiana Civil Rights Comm. v. Meridian Hills Country Club*, the Commission might have decided that Meridian Hills was *not* an employer within the meaning of the Act.

 In the case before us, however, regardless of the outcome of any future unit determination or election, a determination has been made which affects the rights of NEA–South Bend under the 1972 Election Agreement. Though finality may be lacking, because no election has yet been held, the irreparable harm NEA–South Bend will suffer is clearly defined. Thus NEA–South Bend is aided by a well recognized exception to the rule of exhaustion of remedies:

*Exceptions to rule.* The rule that administrative remedies must be exhausted before resort is had to the courts is not absolute and without exceptions. The rule will be departed from in extreme cases, where compliance with the rule would be futile; . . . or where irreparable injury would result. (footnotes omitted) 73 C.J.S. *Public Administrative Bodies & Procedure* § 41, p. 354 (1951).

*See also Wilson v. Review Bd. of Indiana Employment Security Div., supra; I.H.S. A.A. v. Raike, supra; Lone Star Cement Corporation v. F.T.C.* (9th Cir. 1964), 339 F.2d 505; 2 K. Davis, Administrative Law Treatise § 20.03, at 69 (1958).

To require exhaustion in this case would cause irreparable injury to NEA–South Bend. According to Burns' Indiana Administrative Rules & Regulations, Code Edition, (20–7.5–1–9)–21–215–1, a party is not entitled to seek review by the full Board of an election proceedings until after the election is held and the results certified. That section reads as follows:

(20–7.5–1–9)–21. Review by the full board.—215.1. Any party may request review by the full board of the proceedings under sections 200 through 214 [Rules (20–7.5–1–9)–3—(20–7.5–1–9)–20] by filing a notice of intent to request review within 10 days of the dismissal or withdrawal of a petition, unit determination decision where no election is ordered or other representation issue decided, or certification of election results when an election is conducted. When a notice of intent to request review is timely filed, the chairman shall set a date by which the petition for review shall be filed.

Thus, to exhaust its administrative remedies, and have a right to challenge the Board's decision, NEA–South Bend would have to go through with the election. The Federation claims that exhaustion should be required because NEA–South Bend would only be harmed if it should lose the election. It seems to reason that if NEA–South Bend should win the election it would not have been harmed and no review would be necessary.

The harm NEA–South Bend would suffer if it were to lose the election is apparent—it would lose its status as exclusive representative and would no longer be entitled to bargain for the teachers. However, the evidence shows that NEA–South Bend would suffer irreparable harm even if it should win the election. To participate in an election, NEA–South Bend would have to expend $14,500, an amount which would exceed the normal cost of administrative litigation. *See* K. Davis, Administrative Law Treatise, *supra*. Also even if NEA–South Bend were to win the election, its contract rights under the 1972 Election Agreement would be permanently impaired.

The 1972 Election Agreement provides *inter alia* procedures to be used to challenge the winner of the 1972 election. Once a challenge election is held, however, the 1972 Election Agreement will cease to bind the parties, and any future challenges would be governed by the less stringent provisions of the Act. Therefore, if NEA–South Bend is forced to participate in an election, even if victorious, its position as exclusive bargaining agent would be less secure than it would have been if the 1972 Election Agreement were still in force because it could be challenged if 20% of the unit signed a petition (requirement in the Act) instead of 30% (requirement in the 1972 Election Agreement).

The irreparable harm which would have been caused under these unusual circumstances excuses NEA–South Bend from exhausting its administrative remedies before applying for judicial relief.

*ISSUE TWO*

*CONCLUSION*—The trial court did not err in holding that the Board's order unconstitutionally impaired the contractual rights of NEA–South Bend embodied in the 1972 Election Agreement.

Understandably NEA–South Bend embraces the favorable interpretation of Article 10 of the 1972 Election Agreement by the Board in 1974 as being final and conclusive and would apply principles of res judicata to void the Board's subsequent consideration of that issue in its 1977 decision.

Unfortunately neither party enlightens us as to whether principles of res judicata apply to administrative proceedings. And if they do apply, which principle is controlling, "estoppel by judgment" or "collateral estoppel"?

■ "Estoppel by judgment" takes place when a prior adjudication on the merits by a court of competent jurisdiction acts as a bar to a subsequent action on the same claim between the same parties or those in privity with them. *Town of Flora v. Indiana Service Corp.* (1943), 222 Ind. 253, 53 N.E.2d 161; *In re Estate of Nye* (1973), 157 Ind.App. 236, 299 N.E.2d 854; *Mayhew v. Deister* (1969), 144 Ind.App. 111, 244 N.E.2d 448.

■ "Estoppel by verdict" or "collateral estoppel" finds application when a particular issue is adjudicated and then is put into issue in a subsequent suit on a different cause of action between the same parties or those in privity with them. In such cases the former adjudication of the issue is held to bind the parties or privies of the subsequent suit. *See Town of Flora v. Indiana Service Corp., supra*; *In re Estate of Nye, supra*; *Mayhew v. Deister, supra.*

In this case, although the parties are identical, and the critical issue—the meaning of the challenge provision of the 1972 Election Agreement—is identical, the two proceedings before the Board appear to have been two separate causes of action. The first proceeding was initiated by NEA–South Bend as a request for certification as exclusive bargaining representative whereas the second was brought by the Federation as a challenge to NEA–South Bend's exclusive representation. Therefore, our concern here is actually with the application of the collateral estoppel branch of the doctrine of res judicata and how it applies to administrative actions.[5]

■ The weight of modern authority in Indiana and elsewhere convinces us that principles of res judicata should apply to certain administrative determinations.

The modern view on the application of the doctrine of res judicata in administrative determinations is stated by Professor Davis:

As a matter of principle, it is completely clear that the reasons behind the doctrine of res judicata as developed in the

---

5. Because the concepts of "claims" and "causes of action" are so much less important in administrative proceedings than in court cases, most problems of res judicata in administrative law involve collateral estoppel, for the operation of which the issues must be identical. Only rarely do problems of identity of claims or causes of action arise.
2 K. Davis, Administrative Law Treatise § 18.-04 (1958).

court system are fully applicable to *some* administrative proceedings. The reasons against a second litigation between the same parties of the same claims or issues are precisely the same for some administrative determinations as they are for most judicial determinations. The sound view is therefore to use the doctrine of res judicata when the reasons for it are present in full force, to modify it when modification is needed, and to reject it when the reasons against it outweigh those in its favor.

2 *K. Davis, Administrative Law Treatise* § 18.02 (1958).

Administrative agencies are created by the legislature to fulfill various functions—legislative, executive and judicial. Whether the doctrine of res judicata applies may depend partly upon the function the agency is fulfilling.

In general, the answer given by the courts to the question whether an administrative determination is capable of being res judicata depends upon the nature of the administrative action involved, and *the doctrine of res judicata has been applied to administrative action that has been characterized by the courts as "adjudicatory," "judicial," or "quasi-judicial,"* while to administrative determinations of "administrative," "executive," "legislative," or "ministerial" nature the rules of res judicata have been held to be inapplicable. Estoppel by judgment or res judicata does not apply to legislative action by administrative agencies, and for this purpose rate orders are classified as legislative. Res judicata effects have been denied to decisions of administrative tribunals created to transact county business with the power to audit, adjust, and settle all accounts to which the county shall be a party, irrespective of whether such decision allowed or rejected the claim against the county, on the theory that the functions of these agencies are similar to those of comptrollers or accountants, while other cases have held that the decisions of such tribunals are conclusive upon the county and the claimant in collateral proceedings upon the theory that the auditing board exercised judicial or quasijudicial functions.

On the other hand, where an administrative determination has been deemed by the courts to be an exercise of an "adjudicatory," "judicial," or "quasi-judicial" function, its operation as res judicata has been recognized, and it has been held that *where a statutory right to a hearing involves a fair hearing in what amounts at least to somewhat of a court action, fair play demands the application of the doctrine of res judicata to a prior determination of the agency.* The doctrine of res judicata is recognized particularly in regard to those types of administrative action in which the administrative agency is not a party to the proceeding, but adjudicates conflicting claims of the parties coming before it, such as workmen's compensation proceedings, or proceedings before an agency created to determine priorities or rights in the waters of a state, or reparation or similar proceedings before the Interstate Commerce Commission; and in regard to those types which are concerned with and adapted to adjudication of issues which lend themselves readily to being determined in proceedings having the characteristic elements of court proceedings, such as proceedings before the United States Board of Tax Appeals, now the Tax Court. (Emphasis added)

2 *Am.Jur.2d, Administrative Law* § 497 (1962).

However, even though an agency may be exercising a judicial function, there may be reasons not to strictly apply principles of res judicata.

Administrative law must grapple not only with problems of res judicata familiar to the judicial system—identity of claims and issues, identity of parties, final decisions on the merits, collateral attack, jurisdiction—but also with special problems growing out of differences between the judicial process and the administrative process. The principle of res judicata is designed for adjudication, typified by a court proceeding, and many perplex-

ities of res judicata in administrative law concern nonjudicial or unclassifiable functions. Courts normally apply law to past facts which remain static—where res judicata operates at its best—but agencies often work with fluid facts and shifting policies.

. . . . .

The problem of res judicata in administrative law is to develop a set of rules that are especially designed for the special problems resulting from the differences between the judicial and the administrative processes. The starting point is usually the traditional doctrine as applied to judgments of courts; that doctrine should be qualified or relaxed to whatever extent is desirable for making it a proper and useful tool for administrative justice.

2 *K. Davis, Administrative Law Treatise* §§ 18.01 and 18.04.

The United States Supreme Court has found that though "[o]ccasionally courts have used language to the effect that res judicata principles do not apply to administrative proceedings, . . . such language is certainly too broad." *United States v. Utah Construction & Mining Company* (1966), 384 U.S. 394, 421, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642. The court went on to find the principles applicable if the agency was acting in a judicial capacity with disputed issues before it which the parties had ample opportunity to litigate. *United States v. Utah Construction & Mining Company, supra.*

A number of jurisdictions have adopted the view that principles of res judicata should be applied if there is a reason to settle the issues involved once and for all. *Tidewater Oil Co. v. Jackson* (10th Cir. 1963) 320 F.2d 157; *Rubin v. Sanford* (Fla. App.1964), 168 So.2d 774; *Woodlawn Area Citizens Association, Inc. v. Board of County Commissioners for Prince George's County* (1966), 241 Md. 187, 216 A.2d 149; *State ex rel. Turnbladh v. District Court* (1960), 259 Minn. 228, 107 N.W.2d 307; *City of Jackson v. Holliday* (1963), 246 Miss. 412, 149 So.2d 525; *Lubliner v. Board of Alco-*

*holic Beverage Control* (1960), 33 N.J. 428, 165 A.2d 164.

In *Easley v. Metropolitan Bd. of Zoning Appeals* (1974), Ind.App., 317 N.E.2d 185 and *Braughton v. Metropolitan Bd. of Zoning Appeals* (1970), 146 Ind.App. 652, 257 N.E.2d 839, 258 N.E.2d 866, this court applied principles of res judicata to prevent the grant of a zoning variance absent any change in circumstances after the variance had once been denied.

In *Braughton* we found:

[I]t may be said generally that a zoning board should not indiscriminately or repeatedly reconsider a determination denying a variance absent a change of conditions or circumstances. . . . If it were otherwise there would be no finality to such proceedings.

146 Ind.App. at 658, 257 N.E.2d at 842.

It seems a sound conclusion that the principles espoused by this court in *Easley* and *Braughton* in a zoning context should be extended to at least apply to administrative proceedings judicial in nature, unless a convincing reason is advanced why the first proceeding should not be final.

 In this situation, NEA–South Bend's request for certification as exclusive representative in the original proceeding in 1974 was in the nature of a request for declaratory judgment. The parties and the hearing officer treated it as a judicial proceeding. Pleadings were filed, and the hearing officer made conclusions of law as to the effects of the Act and interpretation of the contract—uniquely judicial functions.

From the time of the first agency proceeding to the time of the second agency proceeding, no circumstance changed which would justify another agency decision on the question of the interpretation of the agreement. The interpretation rendered by the original hearing officer was such that the Federation's argument that the 1972 Election Agreement expired after December 30, 1974 is incongruous. He specifically found that the dates set out in Article 10 of the 1972 Election Agreement defined an election and a challenge procedure, and

while the earliest possible date of an election was stated, that date did not constitute a date after which no election could be held. If the Federation was dissatisfied with the interpretation given the agreement at the original hearing, it had an opportunity at the time to seek review by the full Board . . . which it chose not to do.

The principles of res judicata seek to guard parties against vexatious and repetitious litigation of issues which have been determined in a judicial or quasi-judicial proceeding. To reopen the question of how the challenge provisions of the 1972 Election Agreement should be interpreted is merely to relitigate the question already determined. Nothing was changed in the interim.

So we conclude the trial court did not err in utilizing principles of res judicata to reverse the 1977 decision of the Board.

The judgment is affirmed.

SHIELDS and SULLIVAN, JJ., concur.

### APPENDIX A

### DISCUSSION AND CONCLUSIONS OF LAW

(Question of Representation)

Pursuant to IC 1971, 20–7.5–1[–1] a school employee organization may achieve the statutory status of the exclusive representative of the school employees in a bargaining unit through only two procedures. First, a school employer following the procedure set forth in Sec. 10(b) may voluntarily recognize a school employee organization as an exclusive representative of its employees. Second, when recognition as the exclusive representative is not accomplished by the first procedure a school employee organization must file the following:

A petition may be filed by a school employee organization asserting that twenty percent [20%] of the employees in an appropriate unit (i) wish to be represented for collective bargaining by it as exclusive representative, or (ii) asserting that the designated exclusive representative is no longer the representative of the majority of school employees in the unit. [(IC 1971, 20–7.5–1–10(c)(1)]

After such a petition is filed, the I.E.E.R.B. will investigate that petition and if the I.E.E.R.B. has reasonable cause to believe a question exists as to whether the designated exclusive representative or any school employee organization represents a majority of the school employees in a unit, the I.E.E.R.B. will conduct a question of representation hearing. As a result of that hearing, if the I.E.E.R.B. finds that a question of representation exists, it must direct a secret ballot election in the appropriate bargaining unit. The I.E.E.R.B. will then certify as the exclusive representative any school employee organization which is selected by the majority of the employees in the bargaining unit.

The petitioner representing the NEA-South Bend requested by letter on March 5, 1974, and also by petition on April 30, 1974, that the I.E.E.R.B. certify the NEA-South Bend as the exclusive representative of the school employees in the South Bend Community School Corporation. Along with their request, the NEA-South Bend asserted that a majority of the employees wished to be represented for collective bargaining by the NEA-South Bend. Neither the March 5, 1974, letter nor the April 30, 1974, petition meet the representation petition form requirements prescribed by Rules 203.3 of the I.E.E.R.B. Rules and Regulations. However, since those Rules and Regulations were not officially promulgated until April 16, 1974, and do not operate retroactively the NEA-South Bend original request for certification is adequate and sufficient to constitute a Sec. 10(c)(1) petition.

The copy of the American Arbitration Association's certified results of the December 7, 1972, election constitute sufficient evidence of probative value for the I.E.E.R.B. to have a reasonable cause to believe a question exists as to whether the NEA-South Bend represents a majority of the school employees in an appropriate unit.

The hearing was conducted on June 13, 1974 by the undersigned hearing examiner.

From the record of that hearing, the hearing examiner concludes that no question of representation exists as a matter of law due to the concurrently still effective designation of the NEA-South Bend as the exclusive representative which arose from a valid and binding consent election contract consumated prior to the date that IC 1971, 20–7.-5–1[–1] went into full force and effect.

The Teacher Organization Election Procedure (Joint Exhibit 2) is a valid consent election contract binding on the respondents the NEA-South Bend and Federation for the following reasons:

The Teacher Organization Election Procedure provides for a secret ballot election to be conducted on December 7, 1972 for the purpose "to determine the teacher organization which will serve as the exclusive negotiating representative of the regularly appointed teachers within the scope of the determined unit." It also provides that in the election each voting employee will have the choice to select the (1) Federation, (2) NEA-South Bend or (3) no organization as their exclusive negotiating agent.

According to Section 2 of that document the eligibility to vote is restricted to those persons who are teacher-licensed contracted employees of the South Bend Community School Corporation and who are not employed in the following positions:

| | |
|---|---|
| Psychologist | Assistant Director |
| Administrative Assistant | Assistant Principals |
| Assistant Coordinator | Principals |
| Coordinator | Assistant Superintendent |
| Director | Superintendent |

Other sections of the Teacher Organization Election Procedure established campaign and election ground rules and authorize the American Arbitration Association to conduct the Election and establish any further procedures.

Section 10 provides in part that:

It is agreed by and between the parties hereto that the organization obtaining a majority of the valid ballots cast shall serve as the exclusive bargaining agent for the unit for the period beginning December 10, 1972 until such time as a challenge is made in accordance with the procedures herein set forth, provided that

no subsequent election may be held before November 1, 1974.

The above stated provisions of the Teacher Organization Election Procedure constitute a contract whereby those parties agreeing thereto consent to an election to determine whether a teacher organization would exclusively represent for purposes of collective bargaining those employees eligible to vote for a contingent period of time. The unconverted facts establish that the respondents the NEA-South Bend and the Federation agreed to the Teacher Organization Election Procedure and are contractually bound by it.

In the December 7, 1972 secret ballot election there were 1,618 eligible voters of whom 1,524 actually voted. The NEA-South Bend was chosen by 815 of these voters as their choice for the exclusive bargaining agent. Pursuant to December 7, 1972 election results and in accordance with Section 10 of Teacher Organization Election Procedure, the NEA-South Bend has been contractually recognized as the exclusive representative for the employees within the defined unit and such recognition has continued and will continue until a challenge is raised from another teacher organization.

The Teacher Organization Election Procedure is undated but from its contents the hearing examiner concludes that it was consumated prior to the election on December 1972 and therefore the contractual obligations arising from it existed on the date that IC 1971, 20–7.5–1[–1] went in full force and effect. Article I, Section 10 of the United States Constitution and Article I, Section 24 of the Indiana Constitution provide that except in cases of the exercise of police power a state may not impair the existing obligations of contracts. The I.E. E.R.B. has held in *Board of School Commissioners of the City of Indianapolis and Indianapolis Education Association* Case No. R–73–34–5385 (1974) that the implementation of the representation machinery of IC 1971, 20–7.5–1[–1] is not an exercise of the state's police power. The Indiana Supreme Court has stated that statutes must be construed so as to avoid impairing contractual obliga-

'tions that exist when the statute goes into effect. *Haas v. Holder*, 218 Ind. 263, 32 N.E.2d 590 (1941). Therefore, the hearing examiner is constitutionally compelled to conclude that there is no question of representation of the school employees in the South Bend Community School Corporation until the parties to the Teacher Organization Election Procedure are no longer contractually required to recognize the status of the NEA-South Bend as the exclusive for the purpose of collective bargaining.

The Teacher Organization Election Procedure is not a contract in which the parties have agreed to a selection procedure for an infinite period of time, but rather it is a contract by which a procedure is established to determine an exclusive representative for collective bargaining which is to be recognized by the parties for a period of time contingent upon the occurrence of a specific event. Once that event occurs all the obligations of the parties are terminated except the obligations of the challenging organization to pay the costs of the subsequent election. (It should be noted that no costs are incurred by the parties from a representation election conducted by the I.E.E.R.B.). If that contingent event occurs the parties would no longer be contractually obligated to recognize the NEA-South Bend as the exclusive representative and accordingly the I.E.E.R.B. would no longer be constitutionally prohibited from finding that a question of representation exists and thereby proceeding with an election to determine the statutory exclusive representative.

The contingent event is the challenge to the NEA-South Bend's exclusive representation after October 1, 1974 by a teacher organization presenting petitions signed by 30% of the bargaining unit which authorize the organization circulating the petition to represent the signer in negotiations which also requests an election to determine the sole negotiating agent of the South Bend Community School Corporation.

The hearing examiner concludes that the timetable for the presentation of the challenge notwithstanding the earliest date on which the challenge can arise is a matter of procedure in order to facilitate a desirable collective bargaining schedule instead of substantial matter defining the contingent event or defining any of the parties contractual obligations. The timing of collective bargaining is now affected by the impasse procedures of IC 1971, 20–7.5–1[–1], which the respondent and the NEA-South Bend have indicated their willingness to use and which the hearing examiner takes notice that they have used in 1974. Recognition by the I.E.E.R.B. of a challenge which meets the requirements of the Teachers Organization Election Procedure but which is filed in accordance with the timetable set forth in the I.E.E.R.B. Rules and Regulations as terminating the parties obligation to recognize the NEA-South Bend as the exclusive representative would not impair any obligation arising from the Teacher Organization Election Procedure.

In the *Board of School Commissioners of the City of Indianapolis and Indianapolis Education Association, supra,* in which there was a finding identical to the case at bar that there is no question of representation by virtue of a valid contract imposing a duty to recognize and bargain with a school employee organization as an exclusive representative, the I.E.E.R.B. certified that school employee organization as a statutory exclusive representative on the basis of the results of a secret ballot election in which that organization was selected by a majority of the employees. The hearing examiner disagrees with the respondents that the controlling fact for the *Indianapolis* certification was the refusal to bargain with the school employee organization by the school employer. The following holding of the *Indianapolis* case is clear.

> The ruling here should then be that the I.E.E.R.B. will certify an existing exclusive representative which gained its status by winning a valid secret ballot election by a majority of all eligible employees, and certify the I.E.A.

Counsel for the respondents contend that a contract pre-dating IC 1971, 20–7.5–1[–1], cannot serve as a basis for the I.E.E.R.B. certification of an exclusive representative

since certification may be accomplished only through the petition-election provisions of Sec. 10(b) and (c). The case at bar was initiated by a valid 10(c) petition. The certification is based on the results of a prior secret ballot election in which a school employee organization was selected as the exclusive representative by a majority of the employees in the unit. Such a basis will be used only where there is a finding that no question of representation exists as a matter of law because the parties have bound themselves to a pre-IC 1971, 20–7.5–1[–1], contract in which they have the obligation to recognize the winner of an election as the exclusive representative.

Respondent further contends that if the Teacher Organization Procedure is a binding contract, it is binding on all the parties agreeing. Consequently, the NEA-South Bend is bound to accept its status as the exclusive representative on the terms of the agreement rather than modifying their status through statutory procedures. Parties to a contract are not prohibited from exercising their statutory rights except where the terms of a contract explicitly prohibit it. In the absence of any such prohibition and any impairment of pre-IC 1971, 20–7.5–1[–1], contractual obligations, public policy does not restrict parties having contractual rights from availing themselves to collateral statutory rights.

## APPENDIX B

### FINDINGS, CONCLUSIONS AND ORDER

Having considered the Petition for Transfer to the Full Board filed on the 11th day of March, 1977 by respondent National Education Association—South Bend (hereinafter "NEAouth Bend"), and having heard the arguments of counsel and testimony of witnesses, at the meeting of the Indiana Education Employment Relations Board (hereinafter "IEERB") held on March 23, 1977, the IEERB makes the following findings:

1. That a petition asserting that the designated exclusive representative (presently NEA—South Bend) is no longer the representative of the majority of school employees in the unit has been filed by petitioner South Bend Federation of Teachers (hereinafter "Federation"); and

2. That petitioner South Bend Community School Corporation (hereinafter "Corporation") has filed a petition pursuant to IEERB seeking clarification of whether certain job classifications should be excluded from the bargaining unit; and

3. That the petition challenging representation (Finding No. 1 above) and the petition seeking clarification of the unit (Finding No. 2 above) were filed pursuant to IC 20–7.5–1[–1] (Certified Educational Employee Bargaining) and the Rules and Regulations of the IEERB; and

4. That the respondent NEA—South Bend contends in its Petition for Transfer to the Full Board that IC 20–7.5–1[–1] and the Rules and Regulations of the IEERB do not apply to the representation and unit clarification petitions but that the standards controlling representation proceedings and the composition of the bargaining unit are set forth in a document entitled "Teacher Organization Election Procedure for the election of December 7, 1972" (hereinafter the "1972 Election Agreement"); and

5. Paragraphs Nos. 2 and 10 of the 1972 Election Agreement deal with the bargaining unit and the period of certification respectively; and

6. That the collective bargaining agreements for the years 1974–75, 1975–76, and 1976–77 show that NEA—South Bend and the Corporation have bargained the composition of the bargaining unit and have mutually determined to be bound by the rules of the IEERB concerning exclusions from the bargaining unit; and

7. That NEA—South Bend, the Federation, and the Corporation previously stipulated that IEERB had jurisdiction to resolve issues arising from the 1972 Election Agreement and did submit such issues in R–74–94–7205 (p. 485 of 1974–1975 IEERB Annual Report); and

8. That the decision of the hearing examiner in R–74–94–7205 was transferred to the IEERB on November 14, 1974, and approved by the IEERB on November 18, 1974.

## CONCLUSIONS

1. The NEA—South Bend and the Corporation have agreed subsequent to the 1972 Election Agreement to be bound by the Rules and Regulations of the IEERB concerning unit clarification matters and thus the 1972 Election Agreement is not relevant to the consideration of the pending unit clarification petition.

2. The 1972 Election Agreement was entered into by the parties for the purpose of conducting a representation election on December 7, 1972 and since there were then no statutes or rules providing for election or contract bar, the 1972 Election Agreement provided for a bar of two years.

3. Paragraph No. 10 of the 1972 Election Agreement provides the method by which the earliest possible challenge following the 1972 election is to be handled, such procedures applying to any election to be held prior to December 30, 1974.

4. The evidence and testimony concerning the 1972 Election Agreement indicate that the intent of the parties was to write procedures governing the 1972 election only, and that after the passage of the statute, it was the intent of the parties to rely upon the statutory election procedures.

5. The evidence as a whole, including the two separate showings of interest filed by the Federation, show substantial compliance with the procedural requirements of the 1972 Election Agreement as well as IC 20–7.5–1[–1] and the Rules and Regulations of the IEERB.

6. The strict application of the procedures contained in the 1972 Election Agreement would limit and interfere with the rights of the certificated employees of the South Bend Community School Corporation to select an exclusive representative granted to them by the laws of the State of Indiana.

## ORDER

THEREFORE, based on the foregoing findings and conclusions, the IEERB orders the hearing examiner to proceed with the processing of the pending unit and representation petitions pursuant to IC 20–7.5–1[–1] and the Rules and Regulations of the IEERB.

## APPENDIX C

### FINDINGS OF FACT

1. Plaintiff NEA—South Bend is a "school employee organization" as that term is defined by I.C. 20–7.1–1–2(k). Its members consist of public school teachers employed by the South Bend Community School Corporation. The NEA—South Bend is also the "exclusive representative" (as that term is defined by I.C. 20–7.5–1–2(*l*) of all certificated school employees in said School Corporation.

2. Defendant Indiana Education Employment Relations Board (hereinafter "IEERB") is an administrative agency of the state of Indiana, established by I.C. 20–7.5–1[–1] *et seq.* with the duties and responsibilities conferred upon it by said statute.

3. Defendants Victor P. Hoehne, Cleon H. Foust, Jr., and George Gardner are the duly appointed members of the IEERB.

4. Defendant South Bend Community School Corporation (hereinafter the "School Corporation") is a public school corporation organized and existing under the laws of the state of Indiana with authority to operate a public school system in St. Joseph County, Indiana.

5. Defendant South Bend Federation of Teachers (hereinafter "Federation") is a "school employee organization" as that term is defined by I.C. 20–7.5–1–2(k). Its members consist of public school teachers employed by the South Bend Community School Corporation.

6. In 1972 the NEA—South Bend, the Federation, and the School Corporation entered into an agreement entitled "Teacher

 Organization Election Procedure For the Election of December 7, 1972" (hereinafter "1972 Election Agreement"). This Agreement established the procedures for an election on December 7, 1972 to determine whether the teachers in the School Corporation wanted to be represented for collective bargaining purposes by the NEA—South Bend, the Federation, or no organization.

7. Article 10 of the 1972 Election Agreement provides the procedure for an organization to challenge the winner of the 1972 election, subsequent to said election. Article 10 states that the organization winning the 1972 election shall serve as exclusive representative "until such time as a challenge is made in accordance with the procedures herein set forth. . . ." Article 10 provides that a challenge election may not be held until:

1. The challenging organization presents petitions signed by at least 30% of the teachers in the unit, *and*

2. Such petitions are worded as follows: "I hereby authorize the organization circulating this petition to represent me in negotiations before the Board of Trustees concerning wages, hours, working conditions and all matters of professional concern and in doing so hereby request an election to determine the sole negotiating agent in the South Bend Community School Corporation."

8. Article 2 of the 1972 Election Agreement contained the parties' agreement as to the appropriate unit.

9. The NEA—South Bend won the election on December 7, 1972 and was thereby chosen exclusive representative of the teachers in the School Corporation.

10. The Collective Bargaining Act for teachers, I.C. 20–7.5–1[–1] *et seq.*, was enacted by the Indiana General Assembly in the 1973 session as Public Law 217 and went into effect July 1, 1973. It sets forth procedures for determining the appropriate bargaining unit in a school corporation. It also specifies certain requirements which must be followed to obtain a representation election.

11. The requirements of the Act for obtaining a challenge election are more relaxed than those in the 1972 Election Agreement. I.C. 20–7.5–1–10(c)(1) only requires a challenging organization's petition: (1) to be signed by *20%* of the teachers in the unit and (2) to assert that the exclusive representative no longer represents the majority of the employees. In addition to requiring a smaller number of signatures than Article 10 of the 1972 Election Agreement requires, the Act does *not* require the petitions to also request an election.

12. On March 5, 1974 the NEA–South Bend's President, H. Allen Maxwell, requested the IEERB to certify it as exclusive representative of the school employees in the South Bend Community School Corporation. The Federation and the School Corporation opposed the NEA—South Bend's request for certification. The hearing on this request (IEERB Case No. R–74–95–7205) was held on June 13, 1974 before IEERB Hearing Examiner Charles Rubright. At that hearing the 1972 Election Agreement was entered into evidence as a joint exhibit.

13. At the hearing on June 13, 1974 the parties stipulated the facts and agreed to submit them to Hearing Examiner Rubright in written form, signed by each party. On or about June 21, 1974 the NEA—South Bend, the Federation, and the School Corporation, by their respective counsel, filed their Stipulations of Fact with Hearing Examiner Rubright. Paragraph 16 of said Stipulations reads as follows:

"16. The 1972 Election Agreement is a valid agreement which is equally binding upon the NEA and the School Board as well as the AFT [the Federation]."

14. On November 14, 1974 Hearing Examiner Rubright issued his decision in the aforementioned representation case. In his decision, Hearing Examiner Rubright made *inter alia* the following findings and conclusions:

a) The 1972 Election Agreement is a valid agreement which is equally binding upon the NEA—South Bend, the School Corporation, and the Federation.

b) The 1972 Election Agreement pre-dated both the enactment and the effective date of the Collective Bargaining Act for teachers (I.C. 20–7.5–1[–1] *et seq.*). Therefore the United States and Indiana Constitutions preclude the IEERB from construing or applying the Act in such a way as to impair the rights and obligations established by the 1972 Election Agreement.

c) Pursuant to the terms of the 1972 Election Agreement the NEA is entitled to be recognized as the exclusive representative and no challenge election may be held until:

(1) A teacher organization presents petitions signed by 30% of the teachers in the unit, *and*

(2) Such petitions authorize said organization to represent the signers in negotiations *and also* request an election.

d) Once the NEA—South Bend and the School Corporation have agreed upon the bargaining unit it shall not be changed unless:

(1) A school employee files a Complaint to such unit in accordance with I.C. 20–7.5–1–10(a)(2), or

(2) A proper challenge to the NEA—South Bend is commenced in compliance with Article 10 of the 1972 Election Agreement.

Since neither of these conditions had occurred, Hearing Examiner Rubright refused to clarify or amend the bargaining unit.

(e) The NEA—South Bend's request for certification as exclusive representative was granted.

15. Hearing Examiner Rubright's decision, including the foregoing Findings and Conclusions, was adopted by the full IEERB on November 18, 1974.

16. On February 2, 1977 Federation President Michael J. Garretson sent a letter to IEERB Chairman Victor P. Hoehne informing him that he (Garretson) believed the NEA—South Bend no longer represented a majority of the teachers in the bargaining unit. The IEERB treated this letter as a petition by the Federation for a challenge election. Hearing Officer Michael Gianini was assigned to this case (IEERB Case No. R–77–4–7205).

17. On February 11, 1977 Superintendent Donald A. Dake sent a letter to Hearing Officer Gianini proposing an amendment of the bargaining unit. The IEERB treated this letter as a petition for unit amendment.

18. Upon receipt of the Federation's election petition, Hearing Officer Gianini informed the Federation that it had until the first week of March to submit its showing of interest to him. The Federation presented its showing of interest to him during the first week in March. The wording on the Federation's showing of interest submitted during the first week in March reads as follows:

"We the undersigned, as employees of the South Bend Community School Corporation, believe that the designated exclusive representative is no longer the representative of a majority of those in the unit and wish to be represented for purposes of collective bargaining by the South Bend Federation of Teachers."

Although this showing of interest complied with the requirements of the Act, it did not comply with the wording required by Article 10 of the 1972 Election Agreement. The wording on the Federation's showing of interest did not request an election and was different than that specified by Article 10.

19. The NEA—South Bend was unable to ascertain from Hearing Officer Gianini whether the Federation had submitted signed petitions complying with the 1972 Election Agreement. Therefore, on March 11, 1977, the NEA—South bend filed a petition for transfer of this case to the full IEERB. Said petition was granted, and a hearing was held before the full IEERB on March 23, 1977. At said hearing, the evidence established the foregoing facts, including the fact that the Federation's showing of interest submitted during the first week in March did not comply with the requirements of the 1972 Election Agreement.

20. At the hearing before the full IEERB on March 23, 1977, the Federation

submitted a second showing of interest. However, this second showing of interest was not examined by the full IEERB, nor were the signatures on the showing of interest counted by the full IEERB. The IEERB did not consider this second showing of interest in its deliberations. There is no credible evidence indicating whether the Federation's second showing of interest complied with the requirements of the 1972 Election Agreement.

21. The official minutes of the IEERB meeting for March 23, 1977 indicate that after hearing the evidence the Board recessed for its deliberations. Upon reconvening, a motion was proposed by member Cleon Foust and seconded by member George Gardner that the 1972 Election Agreement did not govern the procedures concerning the Federation's election petition and the School Corporation's unit amendment petition. Therefore the Board ordered Hearing Officer Gianini to proceed with the processing of the election and unit petitions according to the Act and the IEERB Rules and Regulations.

22. If the IEERB proceeds with the election in South Bend, it is possible that the NEA—South Bend will lose the election. If it loses the election, it will also lose its status as exclusive representative and will no longer be entitled to bargain for the teachers.

23. If the IEERB proceeds with the election in South Bend, the NEA—South Bend and the Indiana State Teachers Association, with which it is affiliated, will incur cash outlays and manpower costs totalling approximately $14,500. This amount could not be recouped.

24. The foregoing facts indicate that unless the IEERB is enjoined from proceeding with the pending election and unit petitions, the Plaintiff will be irreversibly harmed.

25. The election in South Bend has been scheduled for May 19, 1977. Therefore, emergency relief is necessary.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and jurisdiction of the subject matter of this action.

2. The 1972 Election Agreement remains valid and equally binding upon the NEA—South Bend, the School Corporation and the Federation. Any party attempting to file a challenge election petition or a petition for unit amendment must comply with the requirements of the 1972 Election Agreement, including those requirements set forth in Article 10 of said Agreement.

3. The IEERB has violated the constitutional rights of the NEA—South Bend by ordering its Hearing Officer to proceed with the pending unit and election petitions. The evidence establishes that the petitioning parties have not complied with the requirements of the 1972 Election Agreement. Therefore, the IEERB action is an unconstitutional impairment of the contractual rights of the NEA—South Bend.

4. This Court is barred by the doctrines of *res judicata* and collateral estoppel from considering evidence as to conversations or incidents occurring prior to June 21, 1974 (the date on which the parties stipulated that the 1972 Election Agreement was still valid and binding) if such evidence was presented for the purpose of showing that the 1972 Election Agreement is no longer valid and binding. Hearing Officer Rubright's decision, dated November 14, 1974, in IEERB Case No. R–74–95–7205 constitutes a former adjudication on the issue of the validity and effect of the 1972 Election Agreement. With respect to that issue, there was an identity of parties and issues in the case before Hearing Officer Rubright and in the case at issue. Therefore, this Court cannot go behind Hearing Officer Rubright's decision (which was adopted by the full IEERB) that the 1972 Election Agreement was valid and that the IEERB cannot constitutionally interpret or apply the terms of the Act in such a way as to supersede the requirements of the 1972 Election Agreement.

5. The IEERB Order contravenes IEERB precedent and is contrary to law.

6. Unless the IEERB and its agents are enjoined from processing the pending unit and representation petitions, the NEA—South Bend will be immediately and irreversibly harmed. Furthermore, since the Hearing Officer has scheduled the election for May 19, 1977, emergency relief is necessary.

7. The law is with the Plaintiff and against the Defendants.