INDIANA STATE DEPARTMENT OF
WELFARE, MEDICAID DIVISION,
Appellant (Defendant Below),

v.

Harold STAGNER, Appellee
(Plaintiff Below).

No. 2–580A130.

Court of Appeals of Indiana,
Fourth District.

Sept. 30, 1980.

Theodore L. Sendak, Atty. Gen., Gary L. Shaw, Deputy Atty. Gen., Indianapolis, for appellant.

Paul D. Gresk, Indianapolis, for appellee.

YOUNG, Presiding Judge.

The Indiana State Department of Welfare, Medicaid Division, appeals the issuance of a preliminary injunction ordering the payment of $100,000.00 to Harold Stagner, a qualified provider to Medicaid patients of speech and hearing therapy, pending the resolution of Stagner's underlying suit to recover payment for unreimbursed Medicaid claims. In this interlocutory appeal, the Department asserts several issues for our review, the dispositive issue being whether the trial court erred in taking jurisdiction and granting preliminary injunctive relief before exhaustion of Stagner's administrative remedies.[1] Because we conclude that the trial court abused its discretion in assuming jurisdiction and granting the preliminary injunction before Stagner had exhausted his administrative remedies, we reverse.

---

1. A threshold issue to be resolved is whether the trial court order, titled a temporary restraining order, is in fact a preliminary injunction properly appealable as an interlocutory order under Ind. Rules of Procedure, Appellate Rule 4(B)(3). Because the order was issued after notice and a hearing at which both parties were present, we conclude the order is properly appealable. *Indiana Alcoholic Beverage Comm'n v. Progressive Enterprises, Inc.*, (1972) 259 Ind. 315, 286 N.E.2d 836, 837.

Stagner, a speech and hearing pathologist, certified by the Medicaid Division of the Indiana Department of Welfare as a qualified provider of speech and hearing rehabilitation and training services, has for the past five years provided therapy to geriatric patients in nursing home facilities throughout the State of Indiana. Under the jointly–funded federal–state medicaid program established by Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* (1976 & Supp. II 1978) and IC 12–1–7–14.9 *et seq.* (Burns Code Ed., Supp. 1980), he is, as a qualified provider, eligible for reimbursement for the cost of providing medical services to eligible patients. Reimbursement, however, is not automatic. Rather, as required by 42 U.S.C. § 1396a(a)(37) (Supp. II 1978) and 42 C.F.R. § 447.45(a) and (f) (1979), each submitted claim must be reviewed by the Department prior to payment to determine whether the services for which reimbursement is requested were medically reasonable and necessary.

Stagner's business, Special Education Services, is dependent upon Medicaid reimbursement for an estimated 70% of the medical services it provides, 90% of which services are provided to geriatric patients in nursing homes. Stagner employees screen a nursing home's patients to determine whether any might benefit from speech and hearing therapy. If benefit from treatment is indicated, they contact the patient's physician who, if he accepts Stagner's recommendation, prescribes speech therapy. The prescribing physician's order, renewed every thirty days, is then submitted after the prescribed services are performed to the Department for payment.

All claims submitted for payment by Stagner were paid without delay or problem until January, 1980 when the current controversy began. While almost all claims submitted in December 1979 and January 1980 were paid by the Department, approximately 80% of the February–March claims were denied because, as explained in a letter from the Department dated April 15, 1980, they were found to be medically unnecessary.

Apparently, the decision to deny Stagner's claims was the culmination of an inquiry began several months earlier. The Department, in response to complaints received in late 1978 from various county welfare departments regarding the large amount of speech pathology medicaid claims from Stagner, sent staff investigators to several nursing homes to investigate the patient services being provided. Despite the existence of proper documentation for all patient claims, the medical staff were concerned that unnecessary and wasteful therapy was being provided to some patients who, because of age or mental retardation, were not sufficiently benefited by the treatment to justify its cost. In late 1979, therefore, the Department requested its fiscal agent, Blue Cross–Blue Shield, to review the claims for reimbursement submitted by Stagner before payment to determine whether the patient services provided were medically necessary. The fiscal agent's medical staff, in January 1980, requested Stagner to provide them the complete medical records of each patient for whom a claim for therapy was submitted.

Prompted by the Department's denial of one claim as medically unnecessary in December, 1979, and its initiation of pre–payment review procedures, Stagner requested a meeting with Richard Coryell, Assistant Director of Medicaid. The meeting was held on January 16, 1980 and was attended by Stagner, several of his employees, Coryell and several of the Department's medical staff. At the meeting, Stagner was told by one of the staff physicians that the Department was impressed with about 80% of the patients under treatment at the nursing homes visited and that so long as the patient's attending physician prescribed the speech therapy, the claims would be paid. Satisfied by this assurance, Stagner's business continued as usual until mid–April when Stagner was informed that approximately 80% of his then pending claims were denied as medically unnecessary.

Stagner thereupon initiated this suit in the Marion County trial court on April 18,

1980 requesting both a mandatory preliminary injunction ordering the immediate payment of $135,160.00 to Stagner, and judgment for damages in the amount of $135,160.00 plus $1,000,000.00 in punitive damages.[2] On May 2, 1980, the preliminary injunction was granted and this appeal by the Department was taken.

The Department argues that, because Stagner failed to exhaust the administrative remedies available to him before resort to the trial court, the court's assertion of jurisdiction was premature and its issuance of the preliminary injunction, therefore, an abuse of discretion.

■ It is well settled that resort to the judicial process must ordinarily be postponed until administrative remedies capable of rectifying the claimed error have been pursued to finality. *Reidenbach v. Board of School Trustees,* (1980) Ind.App., 398 N.E.2d 1372. We do not, however, apply this rule mechanistically. Rather, in determining whether or not Stagner should be allowed to bypass available administrative channels, we consider various factors reflecting the policies advanced by the exhaustion doctrine. *Wilson v. Board of Indiana Employment Security Division,* (1979) Ind., 385 N.E.2d 438. The factors relevant to this appeal are: the character of the question presented and the competency of the administrative agency to answer that question; the avoidance of premature interruption of the administrative process in recognition of the interest of the agency in developing a factual record upon which to exercise its discretion and apply its expertise without the threat of litigious interference; the interest in permitting an agency to correct its own errors, a process by which unnecessary judicial proceedings are obviated; and the avoidance of deliberate or frequent flouting of established administrative processes. Balanced against these consider-

ations is the extent or imminence of harm to Stagner if required to pursue administrative remedies.

■ Applying these various factors to the present facts we conclude that the policies reflected in the exhaustion requirement are disserved by permitting Stagner to bypass his administrative remedies. Medical necessity is a question of fact properly decidable by the Department. It is important that opportunity be given the Department to develop a factual record for the application of agency expertise. Similarly, the opportunity for self–correction of errors should be afforded the Department. Waste of judicial resources may thereby be avoided.

■ Stagner contends, however, that he is not bound by the exhaustion rule because no established administrative procedure governing the denial of a Medicaid provider's claims exists. It is true that the exhaustion rule assumes an available statutory remedy at the time the challenged judicial relief is sought. *State v. Morand,* (1976) Ind.App., 349 N.E.2d 718. We review therefore the statutory and regulatory scheme established to govern provider claim payment denials. The Indiana legislature has given the Department the authority to promulgate rules and regulations to deny payment to any provider for any services provided if the Department after investigation finds that the claims were made for services or materials determined by its licensed medical staff as not medically reasonable and necessary. IC 12–1–7–15.7. The Department pursuant to this delegated authority, promulgated regulations establishing standards for the denial of reimbursement claims submitted by providers. 470 IAC 5–1–3.5 (added by amendment, 2 Ind. Register 8).[3] The regulations vest the

2. The amended complaint's prayer for relief included claims submitted for services through April 30, 1980 although the April billing had not yet been received by the Department nor had those claims been denied payment. According to the record, approximately $50,000 worth of claims had been denied as medically

unnecessary as of May 2, 1980, the date the preliminary injunction was issued.

3. 470 IAC 5–1–3.5 reads in pertinent part . . .
   Claim Payment Denial.
   (A) The Department may deny payment, or instruct the Fiscal Agent to deny payment, to any provider for medical assistance services

claim denial decision in the Administrator of the Department or his duly authorized representative and, while permitting the provider to negotiate with the Department on the claim denial, make final the administrator's decision which is effective on the day received. 470 IAC 5-1-3.5(B) and (C). The regulations also establish a procedure for provider appeals from a final administrative decision by which " . . . any provider who believes the rate of Medicaid payment or cost settlement is unfair may appeal to the Department . . . ." 470 IAC 5-1-4(a). Stagner argues that this appeal procedure only covers appeals where the claim's medical necessity is undisputed but the amount of claim payment is contested. However, he provides us no authority or reason for the adoption of such a limiting construction of the regulation's coverage. Generally, the same rules applicable to construction of a statute apply to the construction of administrative rules and regulations 1953 OP. IND. ATT'Y GEN. No. 507. Accordingly, in examining the language used by the Department, we give effect if possible to every word and clause since we presume that all the language in the regulation was used intentionally. *Cf. Gallagher v. Marion County Victim Advocate Program, Inc.*, (1980) Ind.App., 401 N.E.2d 1362 (statutory construction). We refuse to adopt the construction urged by Stagner because it

makes the "cost settlement" language meaningless redundancy—a synonym for "rate of payment." Rather, giving the words "cost settlement" their plain and ordinary meaning, they refer to situations, like the case at hand, where claims are denied payment for any of the reasons referred to in 470 IAC 5-1-3.5, including lack of medical necessity. This gives effect to the Department's intent to create an administrative appeal avenue for providers whose claims are denied under 470 IAC 5-1-3.5.[4] We thus conclude that an administrative procedure does exist which Stagner failed to exhaust before initiating suit in the trial court.

Stagner nonetheless asserts that because irreparable harm from any administrative delay in payment threatens his business, he need not exhaust the administrative channels afforded. He testified at the preliminary injunction hearing that he was unable to pay his staff or meet continued therapy obligations without immediate payment of his claims. This threatened business failure we conclude is not the sort of irreparable injury against which equity protects. It is clear that the temporary loss of income ultimately to be recovered if successful on the merits does not usually constitute irreparable harm. "The key word in

rendered, including materials furnished to any individual or claimed to be rendered or furnished to any individual, if the Department finds:
(1) That the services claimed were not performed; or
(2) That the amount claimed for such services or materials has been or can be paid from other sources; or
(3) That the services claimed were provided to a person other than a person in whose name the claim is made; or
(4) That the claims were made for services or materials determined by licensed medical staff of the state department as not medically reasonable and necessary; or . . . .
(B) The decision as to claim payment denial, is at the discretion of the Administrator, Indiana State Department of Public Welfare or his duly authorized representative, and this decision may include any of the following:
(1) The denial of payment for a particular claim or claims; or

(2) The denial of payment for all claims that have been submitted by the provider pending further investigation by the Department; or
(3) The suspension or withholding of payment on any or all claims of the provider pending an audit or further investigation by the Department.
(C) A provider may negotiate with the Department on the denial of a claim or claims under Section B herein, however, the decision of the administrator shall be final and:
(1) Will be mailed to the provider by United States Mail at the address contained in the Department records, and on the claims;
(2) Will be effective on the day received.

4. *Indeed, it seems reasonable to construe the* "cost settlement" *language as specific reference to the right given the provider under 470 IAC 5-1-3.5(C) to negotiate with the Department the denial of claims. If unhappy with the* "cost settlement" *reached after negotiation, the provider may appeal pursuant to 470 IAC 5-1-4.*

this consideration is irreparable. Mere injuries, however, substantial in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Virginia Petroleum Jobbers Ass'n v. FPC*, (D.C.Cir.1958) 259 F.2d 921, 925.

The exhaustion requirement as here applied affects only the timing not the effectiveness of judicial review. The delay of course is not without cost and we regret the additional pecuniary hardship and stress imposed upon Stagner. However, the expense and annoyance of compliance with administrative procedures are part of the social burden of living under government, *Petroleum Exploration, Inc. v. Public Service Commission*, (1938) 304 U.S. 209, 222, 58 S.Ct. 834, 841, 82 L.Ed. 1294, and such costs do not constitute irreparable harm. *Cf. Sampson v. Murray*, (1974) 415 U.S. 61, 84–92, 94 S.Ct. 937, 950–953, 39 L.Ed.2d 166 (appellate court finding that back pay order would not prevent irreparable harm in view of plaintiff's necessity to meet ongoing financial commitments reversed by Supreme Court). Should Stagner ultimately prevail on the merits, we assume without deciding that any interim costs occasioned by any unreasonable or bad faith agency delay would be recoverable.

The final argument made by Stagner to justify his immediate resort to the judiciary is that the administrative procedures utilized deprived him of his constitutional rights. He submits that the constitutional character of this assertion, involving a purely legal issue, is more appropriately resolved by the judiciary. Stagner argues that as a qualified Medicaid health care provider, he has a state created property interest in the continued receipt of claim reimbursement. He further argues that the Department procedure utilized in the denial of his reimbursement claims, a procedure which afforded no pre–claim denial hearing, deprived him of the procedural due process to which he was constitutionally entitled.

■ The Indiana Supreme Court, in *Wilson v. Board of Indiana Employment Security Division*, (1979) Ind., 385 N.E.2d 438, has recently held that where the *sole issue* presented to the court is the constitutional adequacy of administrative procedures, exhaustion of those challenged procedures is not required. However, we do not construe *Wilson* as holding that any time a constitutional issue is raised, established administrative procedures may be bypassed. To do so would be to permit circumvention of administrative processes by the mere allegation of a constitutional deprivation. Where, as here, a court is asked to adjudicate the substantive merits of a claim and grant relief which an administrative agency could only grant after resolution of the substantive rights of the parties, exhaustion of administrative procedures is still required. We do not, therefore, address Stagner's constitutional claim at this time, asserted as it is amidst other claims involving factual determination and agency expertise.

■ The scope of our review of a preliminary injunction, the grant or denial of which rests in the sound discretion of the trial court, is limited to the determination of whether the trial court's action constituted a clear abuse of discretion. *Unishops Inc. v. May's Family Centers, Inc.*, (1980) Ind.App., 399 N.E.2d 760. Discretion to grant or deny preliminary injunctive relief is measured by several factors: (1) whether the plaintiff's remedies at law are inadequate thus causing irreparable harm pending the resolution of the substantive action if the injunction does not issue; (2) whether the plaintiff has demonstrated at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) whether the threatened injury to the plaintiff outweighs the threatened harm the grant of the injunction may inflict on the defendant; (4) whether, by the grant of the preliminary injunction, the public interest would be disserved. *Rees v. Panhandle Eastern Pipe Line Co.*, (1978) Ind.App., 377 N.E.2d 640; *Citizens Energy Coalition of Indiana v. Sendak*, (7th Cir. 1979) 594 F.2d 1158. Because

we conclude that Stagner's failure to exhaust administrative remedies precludes an award of relief at the end of the litigation, he has failed to demonstrate sufficient likelihood of success on the merits to obtain a preliminary injunction.[5] *Wallace v. Lynn*, (D.C.Cir.1974) 507 F.2d 1186. We necessarily also hold, therefore, that he has failed to demonstrate irreparable harm which would justify interlocutory resort to a corrective judicial process before exhaustion of the existing administrative remedies.

As a result, the trial court abused its discretion in granting Stagner's motion for a preliminary injunction. Stagner is of course free to now avail himself of his administrative remedies.[6] Initiation and pursuit of the administrative process here serves important interests, does not appear particularly burdensome, and need not long delay judicial resolution. If Stagner is unable to obtain justice through administrative channels, he may then seek review and correction by the trial court.

Reversed and remanded with instructions to dissolve the preliminary injunction and dismiss the complaint.

CHIPMAN and MILLER, JJ., concur.

---

**5.** The trial court, in granting the preliminary injunction, placed weight upon an equitable estoppel theory or recovery -i.e., that the assurances provided Stagner at the January 16th meeting gave rise to an equitable estoppel against any later denial of Stagner's claims on medical necessity grounds. This equitable estoppel theory, however, does not impact upon the exhaustion requirement but, rather, upon the substantive merits of Stagner's claim for reimbursement. This theory of recovery can be presented by Stagner to the Department if he pursues an administrative appeal of the claim denials.

**6.** The Department's regulations permit provider appeals from a final order if filed within 30 days of the receipt of the administrative decision being appealed. 470 IAC 5 -1 -4(a)(1). Denial of the claims occurred by letter dated April 15, 1980, giving Stagner 30 days from the receipt of the April 15th letter to file his appeal. Because the trial court's preliminary injunction enjoining the Department from denying the claim was issued on May 2, 1980, before the time of appeal had expired, Stagner may still prosecute his appeal to the Department, when the trial court dissolves the preliminary injunction.