NORTHSIDE SANITARY LANDFILL, INC., Plaintiff-Appellant,

v.

INDIANA ENVIRONMENTAL MANAGEMENT BOARD and Indiana State Board of Health, Defendants-Appellees.

No. 1–883A257.

Court of Appeals of Indiana, First District.

Jan. 4, 1984.

Rehearing Denied Feb. 22, 1984.

Warren D. Krebs, Parr, Richey, Obremskey & Morton, Lebanon, Young, Harris & Harvey, Crawfordsville, for plaintiff-appellant.

Linley E. Pearson, Atty. Gen., Michael Schaefer, Deputy Atty. Gen., Indianapolis, for defendants-appellees.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Upon the denial of its application for a Hazardous Waste Facility Operating Per-

mit by the Indiana Environmental Management Board, Northside Sanitary Landfill, Inc., filed a complaint in the Boone Superior Court seeking declaratory judgment against and damages from the Board. In addition, Northside filed a motion for a preliminary injunction to enjoin the Board from enforcing the order which accompanied its denial of the permit.

Following change of venue to the Montgomery Circuit Court, the court determined it lacked subject matter jurisdiction to entertain Northside's motion, dismissed the cause, and remanded to the Board for further administrative proceedings. From this dismissal Northside now appeals.

We affirm.

### FACTS [1]

On November 20, 1981, regulations governing the disposal of hazardous waste in this state became effective. These regulations, found at 320 Indiana Administrative Code section 4, required hazardous waste disposal operators to obtain an Indiana Hazardous Waste Facility Permit on or before March 20, 1982. 320 Indiana Administrative Code section 4-6-2.

Already engaged in the disposal of hazardous waste and desiring to expand its operations, Northside applied for a permit on March 16, 1982. Negotiations between Northside and the Board ensued, and finally, in a letter dated April 12, 1983, and received on April 14, Northside was advised the Board would consider its application at its regular meeting on April 15. Enclosed with the letter was a copy of a "Summary and Recommendation" prepared by the Board's staff relative to the Northside application. In the document numerous environmental problems at the Northside facility were cited and denial of the permit application was recommended.

In response to this letter, Northside filed a motion for continuance with the Board. At the April 15 meeting the Board considered but denied Northside's motion on grounds it had no right to be heard at that juncture in the proceedings. Further, upon considering its staff's recommendation, the Board voted to deny Northside's application. Relevant to our discussion, the Board determined:

"Because of deficiencies in NSL's application regarding ground water quality and financial assurance for closure and post closure monitoring and maintenance, and because of continuing environmental violations at the existing facility, the Board hereby denies the NSL a hazardous waste facility permit under I.C. 13-7-8.5 and I.C. 13-7-10. . ."

Record at 269. In addition, the Board informed Northside of its right to an administrative hearing concerning the decision.

"If the Board decides to deny the permit the applicant may petition for a hearing before the Board within 15 days after the date of receipt of notice of the denial of the permit. If the applicant does request a hearing within the alloted [sic] time then the Board itself or through its appointed hearing officer will hold an administrative adjudicatory hearing to hear testimony on the record to make findings of fact and a final determination.

If that final determination is not acceptable to the applicant then he has the right to go to Court for a judicial review of the Board's determination. Consequently, through the appeal process the applicant would be given due process and the right to be heard."

Record at 268-69.

Relative to its denial of Northside's application, the Board, on May 4, 1983, issued a

---

**1.** Attention of counsel for both parties is directed to Indiana Rules of Procedure, Appellate Rule 8.3(A)(5) which requires, *inter alia*, "[a] statement of the facts relevant to the issues presented for review, *with appropriate references to the record." Id.* (emphasis supplied). Notwithstanding the occasional references supplied by the parties, our disposition of this case has been hindered by the absence of certain critical references. No further time will be expended by this court naming each of the omissions; suffice it to say we have searched the record for the entries which were in need of analysis. However, we remind counsel that such a search is not the duty of this court. Rather, it is the responsibility of appellate counsel to provide all appropriate references to the record in their briefs.

Notice of Violation, Compliance Order, and Hearing. Pertinent to the issues before us, Northside was notified of the following:

*"Preliminary Order*

I. Because the Board in a separate action on April 15, 1983, has denied Respondent's application for a hazardous waste facility operating permit, it is hereby ordered that upon receipt of this order Respondent cease receiving any hazardous waste under 320 IAC 4 (40 CFR Parts 260 to 265).

II. A. Pursuant to 320 IAC 4-7-1 (40 CFR 265.112(c)), an owner or operator of a hazardous waste facility must submit his closure plan for the facility no later than fifteen (15) days after:

(1) termination of a permit issued under the hazardous waste article (320 IAC 4); or

(2) issuance of an order of compliance to cease receiving hazardous waste or to close.

Accordingly, pursuant to 320 IAC 4-7-1 (40 CFR 265.112(c)), Respondent is hereby ordered to submit to the Board, within fifteen (15) days of receipt of this order: an updated closure plan and post-closure monitoring and maintenance plan which shall include the West Field and the filled portion of the East Field; and, plans and schedule of implementation for remedial action with regard to the source of ground water contamination and ground water cleanup. The update shall also include:

(i) An update of the cost estimates of closure and post-closure monitoring and maintenance; and

(ii) A closure schedule which shall indicate the beginning of closure no later than fifteen (15) days after the date the closure plan and post-closure monitoring and maintenance plan have been approved by the Board, and completion of closure in accordance with deadlines specified in Rule 320 IAC 4-7-1.

B. Pursuant to 320 IAC 4-7, within fifteen (15) days after the Board approves the closure plan and post-clo-sure monitoring and maintenance plan, Respondent shall deposit into the closure and post-closure trust fund in the custody of the trustee, Farmer's State Bank of Zionsville, or the successor trustee, an amount equal to the up-dated closure and post-closure cost estimate, less the $25,440 already in the fund, and any interest accrued thereon."

Record at 378-79.

Additionally, the Board advised Northside of the following penalty:

*"Proposed Civil Penalty*

Failure to comply with any requirement of this preliminary order shall subject the above named Respondent to liability for a further civil penalty of up to $25,-000 for each day of continued noncompliance after the specified deadline date of this order. The Board is authorized to assess such penalties pursuant to IC 13-7-13-1."

Record at 380. The Board then concluded its notice by again advising Northside of its right to an administrative hearing.

Northside, however, did not pursue its administrative remedies, choosing instead to seek judicial relief. Finding that Northside had failed to exhaust its administrative remedies, the Montgomery Circuit Court determined it lacked subject matter jurisdiction and accordingly dismissed Northside's action.

ISSUES

In the interest of clarity, we have restated the issues as follows:

1. Did the trial court err in determining Northside had failed to exhaust its administrative remedies?

2. Would the statutory scheme governing administrative hearings held by the Board have provided Northside with due process?

3. Did the trial court err in determining the Board had not yet made a final decision regarding Northside's permit application?

4. Did the trial court err in remanding the cause for further administrative proceedings?

## DISCUSSION AND DECISION

*Issue One*

Northside's initial argument concerns the trial court's determination that it had failed to exhaust its administrative remedies before seeking judicial review. Northside does not deny there were administrative channels available to it upon the denial of its permit application, but rather, contends the presence of certain extraordinary circumstances rendered those remedies useless. Thus, Northside submits, the trial court erred in failing to address the merits of its action.

■■■ Generally, until a party exhausts available administrative remedies, courts have no jurisdiction to grant relief. *Drake v. Indiana Department of Natural Resources,* (1983) Ind.App., 453 N.E.2d 293, 296 (transfer pending); *Evans v. Stanton,* (1981) Ind.App., 419 N.E.2d 253, 255; *Indiana State Department of Welfare, Medicaid Division v. Stagner,* (1980) Ind.App., 410 N.E.2d 1348, 1351; *St. Joseph's Hospital, Inc. of Fort Wayne v. Huntington County Department of Public Welfare,* (1980) Ind.App., 405 N.E.2d 627, 629; *Reidenbach v. Board of School Trustees of the West Noble School Corp.,* (1980) Ind.App., 398 N.E.2d 1372, 1374; *South Bend Federation of Teachers v. National Education Association—South Bend,* (1979) 180 Ind.App. 299, 309, 389 N.E.2d 23, 30, *trans. denied; Amburgey v. Miller,* (1977) 173 Ind.App. 116, 118, 362 N.E.2d 869, 871. This general rule is not without exceptions, however, and must not be applied in a mechanical fashion. *Wilson v. Review Board of the Indiana Employment Security Division,* (1979) 270 Ind. 302, 305, 385 N.E.2d 438, 441, *cert. denied* 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101. Thus, under certain extraordinary circumstances strict compliance with the rule is not required. These exceptions include: where compliance would be futile, *Bowen v. Sonnenburg,* (1980) Ind.App., 411 N.E.2d 390, 403;

where an applicable statute is charged to be void on its face, *Drake,* 453 N.E.2d at 296; or when strict compliance would result in irreparable harm. *South Bend Federation of Teachers,* 180 Ind.App. at 309, 389 N.E.2d at 30.

■■ In determining whether any of these exceptions are present, trial courts are to consider the following factors:

"the character of the question presented and the competency of the administrative agency to answer that question; the avoidance of premature interruption of the administrative process in recognition of the interest of the agency in developing a factual record upon which to exercise its discretion and apply its expertise without the threat of litigious interference; the interest in permitting an agency to correct its own errors, a process by which unnecessary judicial proceedings are obviated; and the avoidance of deliberate or frequent flouting of established administrative processes."

*Stagner,* 410 N.E.2d at 1351.

In the instant case, Northside attempts to convince us that all three exceptions to the exhaustion rule have been satisfied thus enabling it to seek immediate judicial relief. Our review of the record, however, leads us to conclude the trial court was correct in deciding to the contrary.

Initially, Northside argues that because the Board failed to conduct a public hearing prior to denying the permit application, the statutory scheme relied upon by the Board is void on its face. We agree with Northside insofar as a hearing was required, but believe its proper recourse was, nevertheless, administrative in nature.

Applicable at the time Northside's permit application was before the Board were the requirements set forth in Indiana Code section 13–7–10–2 (1981 Repl.):

"(b) A public hearing shall be held on the question of the issuance of an original or renewal permit for a hazardous waste disposal facility under IC 13–7–8.5 [13–7–8.5–1—13–7–8.5–8], or on the question of

the issuance of an original permit for a solid waste disposal facility upon:

(1) The request of the applicant;

(2) The filing of a petition requesting a public hearing and signed by one hundred [100] adult individuals who reside in the county where the proposed or existing facility is or is to be located...; or

(3) The motion of the board or agency."

*Id.*[2]

█ Despite the Board's failure to hold the required public hearing we do not believe Northside was automatically entitled to immediate judicial review. Rather, it should have proceeded with the administrative review procedure available to it under Indiana Code section 13–7–10–4.[3] In fact, this would have been preferable because it would have afforded the Board an opportunity to correct its own error. *Stagner*, 410 N.E.2d at 1351. Consequently, we do not believe the trial court erred when it found, with respect to this issue, that Northside had failed to exhaust its administrative remedies.

Alternatively, Northside argues that any exercise of its administrative remedies would have been futile because the hearing would have been before some of the same Board members who voted to deny the permit initially. Therefore, Northside asserts, it could not be assured of receiving an impartial review.[4] This contention is without merit.

█ Except as otherwise provided, hearings conducted by the Board are governed by the terms of the Administrative Adjudication Act.[5] Indiana Code section 13–7–10–4(c). Relevant to this issue, the Act provides:

"Whenever a hearing is conducted by an agent or representative of an agency such agent or representative who presides at such hearing shall not consult any person or party on any fact in issue unless upon notice and opportunity for all parties to participate. No agent or representative conducting a hearing shall

2. This section has since been amended, Public Law 171–1983, § 4; Indiana Code section 13–7–10–2 (1983 Supp.). It now provides, *inter alia,* "If the staff recommends to the board that the permit or renewal permit be denied, there is no requirement for the public hearing under this subsection." Because this amendment did not become effective until September 1, 1983, it is of no import here. Accordingly, we express no opinion as to its possible application in any future proceedings.

3. This section provides:

"(a) If a permit is denied or if the permit is issued with terms and conditions which are objectionable to the applicant, the applicant may petition for a hearing before the board or appropriate agency within fifteen [15] days after the date of receipt of the permit or notice of a denial of permit. Such a petition which is timely and which complies with any other requirements of the board or appropriate agency shall be granted. A person aggrieved by the denial of a petition for hearing or by the denial or issuance of a permit after hearing may seek judicial review thereof pursuant to IC 13–7–17 [13–7–17–1—13–7–17–2]. For the purposes of making such an appeal, the date of denial of the petition for hearing under this section is the date of the final determination of the board or agency.

(b) At a hearing under this chapter, the petitioner has the burden of proving to the board or agency:

(1) Why the permit should be issued; or

(2) Why the terms and conditions of the permit are not justified or are otherwise invalid.

(c) The board or appropriate agency may designate a person to be a hearing officer. Except as provided in this section, hearings shall be conducted under IC 4–22–1 [4–22–1–1—4–22–1–30]. [IC 13–7–10–4, as added by Acts 1972, P.L. 100, § 1; 1980, P.L. 103, § 12.]"

4. Northside also challenges the validity of the Board's vote denying the permit on grounds there were too few members present and voting to constitute a quorum. Northside is wrong. Indiana Code section 13–7–2–5(c) provides that a quorum exists if six board members are present; six were present at the meeting in question. Furthermore, while a majority of the eleven member board must vote on certain specified issues, Indiana Code section 13–7–2–5(c)(1)–(3), the denial of a permit is not one of them. Thus, we find nothing improper in the fact that one of the Board members present abstained with the remaining five members voting to deny the permit.

5. Indiana Code sections 4–22–1–1 through 30.

perform any of the investigative or prosecuting functions of said agency in the case heard or to be heard by him or in a factually related case. *This section shall not apply in initially determining applications for licenses or permits* or to proceedings involving the validity or application of rates, facilities or practices of public utilities or carriers nor shall it be applicable in any manner to the agency or any member of the board or body comprising the agency."

Indiana Code section 4–22–1–20 (emphasis supplied). Thus, by its express terms the Act permits Board members who considered Northside's permit application to also participate in any subsequent administrative review. *See City of Gary v. Gause,* (1974) 162 Ind.App. 97, 105–06, 317 N.E.2d 887, 892, *trans. denied* (1975). Moreover, Northside has failed to show how any of the Board members were biased or incapable of providing an impartial hearing. The mere fact Northside may have feared the Board would reach the same result following an administrative hearing is not sufficient to render the process futile, *see* 2 Am.Jur.2d *Administrative Law* § 605 (1962), nor does it justify ignoring the process altogether.

■ Finally, Northside argues it should have been permitted to circumvent its administrative remedies and seek immediate judicial review because the denial of the permit created the potential for irreparable economic harm. According to Northside, the Board's denial and accompanying order not only prevented it from accepting hazardous waste but also impeded its other disposal operations. As a result of these economic sanctions, Northside submits it may well be forced into bankruptcy proceedings.

To bolster its argument in favor of immediate judicial review, Northside directs our attention to *Abbott Laboratories v. Gardner,* (1967) 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681. Therein following the pro-

mulgation of new federal regulations regarding the labeling of prescription drugs, various pharmaceutical concerns challenged their validity with an action brought under the Federal Declaratory Judgment Act. 28 U.S.C. section 2201. Pertinent to the present discussion, the Supreme Court held the petitioners would not need to exhaust other administrative channels because of the irreparable harm that could result while seeking relief. In the Court's view,

> "Where the legal issue presented is fit for judicial resolution, and where a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, access to the courts under the Administrative Procedure Act and the Declaratory Judgment Act must be permitted, absent a statutory bar or some other unusual circumstance, neither of which appears here."

*Abbott Laboratories,* 387 U.S. at 153, 87 S.Ct. at 1518, 18 L.Ed.2d at 694.

Like the petitioners in *Abbott Laboratories,* Northside contends the denial of the permit and imposition of the $25,000 per day penalty for noncompliance [6] have so altered the conduct of its business that immediate judicial review is imperative. In our view, however, Northside has ignored several important factors which make *Abbott Laboratories* distinguishable from the instant case.

First, as the Supreme Court acknowledged, the petitioners in *Abbott Laboratories* were proceeding under the Federal Declaratory Judgment Act. Thus, while they may have satisfied the criterion of the federal act with regard to exhaustion, it does not necessarily follow that Northside has shown the requisite irreparable harm to justify circumvention of its administrative remedies. In fact, Northside readily concedes it voluntarily ceased its hazardous waste operations in January of 1983, well before the permit was denied.

**6.** There is no evidence in the record indicating that this penalty has ever been assessed against

Northside since its imposition.

More importantly, in *Abbott Laboratories*, the question before the federal trial court was "a purely legal one," *id.*, 387 U.S. at 149, 87 S.Ct. at 1515, 18 L.Ed.2d at 691, and the agency action in promulgating the challenged regulatory scheme was unquestionably final. *Id.*, 387 U.S. at 149, 87 S.Ct. at 1516, 18 L.Ed.2d at 692. Here, the proceedings with respect to Northside's permit application were anything but final, and because no administrative hearing had been conducted, the trial court was necessarily faced with factual issues better resolved by the Board.

Finally, while Northside has presented allegations of potential economic harm it may suffer as a result of the Board's denial, in our view, these allegations are speculative at best. As previously noted, Northside had already voluntarily ceased its hazardous waste operations; thus, denial of the permit simply prevented it from reestablishing those operations. Moreover, Northside fails to recognize the denial was merely an initial determination that, based upon the information in its application, a permit could not be issued at that time. If Northside had other factual issues—such as potential economic hardship—which it desired the Board to consider, it had a well-defined administrative proceeding wherein it could present any relevant evidence. To permit Northside to ignore these administrative proceedings, and instead pursue immediate judicial review, serves only to defeat the intention of our legislature in designing this administrative framework. Furthermore, it affords neither the trial court nor this court on review the detailed record necessary to evaluate the initial administrative decision; a record which, because of the technical issues involved, the Board, unlike the trial court, is equipped to prepare.

We find no error in the trial court's determination that Northside failed to exhaust its administrative remedies.

*Issue Two*

■ In a further challenge to the administrative review process, Northside argues the statutory scheme governing the hear-

ing procedure would have failed to ensure it due process. Specifically, Northside contends it could not have received a fair and impartial hearing since some of the same Board members who initially voted to deny the permit would have participated in the hearing. This procedure, Northside submits, was condemned by the Supreme Court in *Goldberg v. Kelly*, (1970) 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287.

Northside is correct insofar as due process rights are generally required even in administrative proceedings, *Atkinson v. City of Marion*, (1980) Ind.App., 411 N.E.2d 622, 628; but we fail to agree *Goldberg* dictates the result advanced by Northside. In that case the Supreme Court held the termination of welfare benefits without a pre-termination hearing denied the recipient due process. Then, in defining the requirements of such a hearing, the court made the following observation regarding the issue of the decision maker's impartiality: "And, of course, an impartial decision maker is essential. We agree with the District Court that prior involvement in some aspects of a case will not necessarily bar a welfare official from acting as a decision maker. He should not, however, have participated in making the determination under review." *Id.* (citations omitted). 397 U.S. at 271, 90 S.Ct. at 1022, 25 L.Ed.2d at 301.

Central to the present case is the court's observation that "prior involvement in *some* aspects" does not necessarily require disqualification in subsequent administrative proceedings. *Id.* (emphasis supplied). In the context of *Goldberg* the Supreme Court found a caseworker's initial investigation and recommendation that welfare benefits be terminated precluded him from participating in any subsequent administrative hearing. Short of this type of investigatory activity, the court failed to define the limits of permissible involvement.

Developing this theme, our courts have prohibited participation in the review process by individuals who have "served as [an] advocate for one of two opposing parties in an adversary proceeding..." *City of*

*Mishawaka v. Stewart,* (1974) 261 Ind. 670, 678, 310 N.E.2d 65, 69. Thus, our supreme court held that a city attorney may not sit as a voting member of a board of public works and at the same time prosecute an action before the board. *Accord City of Hammond v. State,* (1980) Ind.App., 411 N.E.2d 152.

Here, the role of Board members in considering Northside's permit application was decidedly different from that of the city attorney in *City of Mishawaka.* The challenged party there had already taken an adversarial position by virtue of his initial role in the proceedings. His ability to provide an impartial review was highly suspect. In the instant case, Board members were never cast in an adversarial position *vis-a-vis* Northside. Instead, they merely acted as an administrative body in their consideration of Northside's permit application. This administrative role is clearly distinguishable from the adversarial position of the city attorney in *City of Mishawaka.* We therefore fail to see how the participation of the Board members in a subsequent hearing would have denied Northside due process.

### Issue Three

Northside next challenges the trial court's finding that the Board had not made a final determination regarding its permit application. This erroneous finding, in Northside's view, led to the trial court's ultimate conclusion that Northside must first exhaust its administrative remedies before seeking judicial relief. Having touched briefly on this issue in the preceding discussion it is easily disposed of here.

The denial of Northside's application did not conclude the administrative proceedings, but rather triggered the next stage: the hearing and appeal process. Under Indiana Code section 13-7-10-4, Northside could have petitioned the Board for a hearing, and if done in a timely manner, the statute directs that a hearing "shall be granted." *Id.* Only at the conclusion of this hearing, and upon the issuance of the Board's decision, would the administrative process become final for purposes of seeking judicial review.[7]

Hence, it is clear the Board's denial of Northside's permit application did not conclude the administrative proceedings for purposes of seeking judicial review. We therefore agree with the trial court that the Board's decision was not final.

### Issue Four

Northside's final challenge concerns the trial court's order remanding this cause to the Board for further administrative proceedings. In Northside's view, the trial court should have addressed the other issues raised in its complaint which were unrelated to the denial of the permit. We disagree.

When a trial court determines an administrative agency's decision is contrary to law, the only remedy it may grant following vacation of the decision is to remand for further proceedings. *Indiana State Board of Embalmers & Funeral Directors v. Keller,* (1980) Ind., 409 N.E.2d 583, 585; *Shettle v. Shearer,* (1981) Ind. App., 425 N.E.2d 739, 741. Here, while the trial court did not find the Board's decision to be contrary to law, it correctly concluded the administrative proceedings had not been completed and simply remanded for their completion. We fail to see, as Northside contends, how this order was either overly broad or in any way prejudicial to its interests. To the contrary, we believe the trial court chose the correct remedy when it remanded this cause to the Board.

Finding no error in the trial court's dismissal of Northside's action, we affirm.

Affirmed.

NEAL, P.J., and ROBERTSON, J., concur.

---

7. Alternatively, if a petition is denied and no hearing is held, the applicant may then seek judicial review, and "[f]or the purposes of making such an appeal, the date of denial of the petition for hearing under this section is the date of the final determination of the board or agency." *Id.*