Millard HAGGARD, Appellant
(Plaintiff Below),

v.

PSI ENERGY, INC., Appellee
(Defendant Below).

No. 39A01–9103–CV–74.

Court of Appeals of Indiana,
First District.

July 31, 1991.

John Emry, Franklin, Neil R. Comer, Osgood, James B. Morris, Versailles, for appellant.

Eric M. Cavanaugh, Kay E. Pashos, PSI Energy, Inc., Plainfield, George A. Leininger, Jr., Cooper, Cox, Jacobs, Barlow & Leininger, Madison, for appellee.

ROBERTSON, Judge.

Millard Haggard appeals from an adverse summary judgment in his suit against PSI Energy, Inc. [PSI]. PSI refused to provide electrical service to Millard's mobile home in which Millard's son, Michael, was to live because Michael owed PSI $443.41 for electrical service received at a different address. Haggard's suit alleged that PSI violated his federally pro-

tected civil rights giving rise to an action pursuant to 42 U.S.C. § 1983. He also sought redress under state law and made claims under the Indiana Constitution. Haggard claimed $300,000.00 in compensatory and punitive damages. We affirm.

## FACTS

The facts in the light most favorable to non-movant, Millard Haggard, indicate that in 1987, Millard bought a mobile home for the purpose of renting it out. Initially, Millard intended to rent the mobile home to his son, Michael Haggard. Michael called PSI and requested electrical service for the mobile home in Millard Haggard's name. When PSI learned that Michael was to live in the mobile home, it refused to provide electrical service because Michael owed PSI $443.41 for electrical service at a different address.

PSI is a corporation consolidated in the State of Indiana and is an investor-owned utility providing electrical service to retail customers within the State of Indiana. PSI is regulated by the Indiana Utility Regulatory Commission of Indiana [IURC] (formerly known as the Public Service Commission) pursuant to the Public Service Commission Act of 1913, as amended, IND. CODE 8-1-2-1 *et seq.*

PSI has consistently based its denial of service to Haggard based on Section 3.2 of its retail tariff (entitled *General Terms and Conditions For Electric Service*) filed with the IURC which reads:

Company shall have the right to reject any application for service made by, or for the benefit of, a former Customer who is indebted to Company for the same class of service previously supplied at any premises in the Company's service area, or for any other valid or legal reason.

Millard contacted PSI's office in Plainfield, Indiana about his inability to obtain electrical service for the mobile home. On June 4, 1987, PSI's representative wrote to Millard explaining PSI's refusal to install service as follows (pertinent part only):

The situation with the refusal of electric service for Michael Haggard in your name is directly related to Michael's unpaid bill from a previous location for $443.41. He has refused to pay the bill or to make suitable arrangements for payment of that bill.

Since the electricity would be for Michael's use, we are refusing to install service until the matter with the unpaid bill is resolved. This could be handled by full payment or set up on a payment schedule.

We hope this letter explains our position in this matter; however, if you disagree you may request an informal review by the Indiana Utility Regulatory Commission by contacting this state agency in writing within seven days from the date of this letter. A copy should also be sent to our office. The address of the Commission is: 901 State Office Building, Indianapolis, IN 46204.[1]

Next, Millard wrote a letter dated October 12, 1987 to the IURC complaining about his inability to obtain electrical service for his mobile home from PSI. Ms. Waneta L. Wampler, Director of the Consumer Affairs Division of the IURC, responded to Millard in a letter dated October 27, 1987 in which she essentially took the side of PSI. The IURC took no action against PSI as a result of Millard's letter. The October 12, 1987 letter was the only attempt Haggard made to obtain relief from the IURC before filing the present lawsuit in the trial court.

## DECISION

### I.

*Haggard's Claim Under 42 U.S.C. § 1983*

■ It is well settled that in order to establish a claim for damages under § 1983

---

**1.** This letter informed Haggard of the procedure to obtain an informal review of a utilities' decision from the IURC as prescribed by 170 IAC 4-1-17. Although Haggard failed to comply with the requirements for obtaining an informal review under this regulation, it would appear that he nevertheless received an informal review as a result of his October 12, 1987 letter to the IURC.

of the Civil Rights Act the conduct complained of must have been engaged in under color of law and such conduct must have infringed upon the rights, privileges or immunities secured to the complaining party by the Constitution or laws of the United States. *Kadlec v. Illinois Bell Tel. Co.* (7th Cir., 1969), 407 F.2d 624, *cert. denied*, 396 U.S. 846, 90 S.Ct. 90, 24 L.Ed.2d 95. While the principle that private action is immune from the restrictions of the Fourteenth Amendment is well established and easily stated, the question whether particular conduct is "private" on the one hand, or "state action," on the other, frequently admits of no easy answer. *Jackson v. Metropolitan Edison Co.* (1974), 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477. The § 1983 requirement of conduct taken under color of law can rarely be satisfied in a case involving anyone other than a state official. *Kadlec*, 407 F.2d 624. A private person does not act under color of state law unless he derives some aid, comfort, incentive, either real or apparent, from the state. *Lucas v. Wisconsin Elec. Power Co.* (7th Cir., 1972), 466 F.2d 638, *cert. denied*, 409 U.S. 1114, 93 S.Ct. 928, 34 L.Ed.2d 696.

In the present case (as in *Jackson*, 419 U.S. 345, 95 S.Ct. 449), the action complained of was taken by a utility company which is privately owned and operated, but which in many particulars of its business is subject to extensive state regulation. The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment. *Jackson, id.* Nor does the fact that the regulation is extensive and detailed, as in the case of most public utilities, do so. *Id.* It may well be that acts of a heavily regulated utility with at least something of a governmentally protected monopoly will more readily be found to be "state" acts than will the acts of an entity lacking these characteristics. *Id.* But the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself. *Id.* The

true nature of the State's involvement may not be immediately obvious, and detailed inquiry may be required in order to determine whether the test is met. *Id.*

In *Jackson*, the electric utility terminated the plaintiff's electric service allegedly without notice, a hearing, and an opportunity to pay any amounts found due. The plaintiff alleged that the utilities' action—taken pursuant to its general tariff filed with the state utility commission—deprived her of property without due process of law giving rise to a cause of action under § 1983. The United States Supreme Court held that the plaintiff—having shown no more than that the respondent was a heavily regulated private utility with a partial monopoly and that it elected to terminate service in a manner consistent with its general tariff filed with the state utility commission—failed to show that the utilities' conduct was attributable to the State for purposes of the Fourteenth Amendment. *Id.*

In *Kadlec*, 407 F.2d 624, the plaintiff alleged the telephone company violated his constitutional rights giving rise to a § 1983 action when it discontinued a certain service pursuant to its regulations filed with state authorities. The *Kadlec* court held that the mere filing of the regulation in question with the State neither clothed the utility with State authority nor did it bring it under the aegis of the State. The *Kadlec* court noted:

> Motivated by purely private economic interests and pursuant to its *own regulations*, Illinois Bell terminated plaintiffs' [service]. The only apparent state connection with the termination rests in the fact that defendant company filed its regulations with state authorities; the state in no sense benefited from, encouraged, requested or cooperated in this suspension of service.

407 F.2d at 626 (emphasis in original).

We believe the resolution of the present case is controlled by *Jackson*, 419 U.S. at 347, 95 S.Ct. at 451, and *Kadlec*, 407 F.2d 624. In the present case, PSI refused to connect electrical service to Millard Haggard's mobile home pursuant to § 3.2 of its

retail tariff filed with the IURC. PSI was motivated by purely economic interests; it wished to collect the debt owed by Michael Haggard. The State of Indiana in no sense benefited from, encouraged, requested or cooperated in PSI's refusal to provide Haggard with electrical service. We hold the mere filing of § 3.2 of PSI's retail tariff neither clothed PSI with State authority nor brought it under the aegis of the state. We hold that Haggard has failed to show a sufficiently close nexus between the State and PSI's refusal to provide Haggard electrical service such that PSI's denial of service may be fairly treated as State action.

Haggard failed to establish that PSI's conduct in refusing to provide him electrical service was engaged in under the color of law necessary to establish a claim for damages under § 1983 of the Civil Rights Act. Therefore, the trial court committed no error in granting PSI's motion for summary judgment with regard to Haggard's claim for damages brought pursuant to 42 U.S.C. § 1983.

## II.

### Haggard's Claims based on State Law

Haggard asserts that his complaint states a cause of action cognizable under state law. He asserts that under state law he is entitled to be compensated for the loss of rental income from being unable to rent his trailer, the loss or abuse of civil rights, state constitutional rights, statutory rights and privileges, emotional distress, pain and suffering and other damages.

Clearly, Haggard's "state law" claims—regardless of any inadequacy in their pleading or prosecution [2]—arise out of PSI's application of § 3.2 of its retail tariff in denying Haggard electrical service at his trailer. Any attack on the validity or application of a utilities' tariff approved by the utility commission is within the exclusive jurisdiction of the Public Service Commission (now the IURC). *Indiana Bell Tel. Co., Inc. v. Friedland* (1978), 175 Ind.App. 622, 373 N.E.2d 344, *cert. denied*, 440 U.S. 916, 99 S.Ct. 1233, 59 L.Ed.2d 465. Where the legislature has provided an exclusive administrative remedy, the courts are without jurisdiction until the statutory procedure has been exhausted or denied. *Indiana Forge and Machine Co., Inc. v. Northern Indiana Public Service Co.* (1979), Ind.App., 396 N.E.2d 910. The exhaustion of administrative remedies is the necessary precursor to judicial review. *Id.* In *Indiana Bell* and *Indiana Forge*, we held that the plaintiffs' claims were foreclosed because they failed to avail themselves of the complaint procedure provided by IND.CODE 8–1–2–54.[3]

**2.** PSI argues that Haggard failed to raise these claims at the trial court level and therefore has waived them on appeal. Citing *Willsey v. Peoples Federal Savings and Loan Ass'n.* (1988), Ind.App., 529 N.E.2d 1199, *trans. denied.* However, Haggard's complaint does mention these claims and therefore we will address this issue on the merits.

**3.** Indiana Code 8–1–2–54 reads:

Upon a complaint made against any public utility by any mercantile, agricultural or manufacturing society or by any body politic or municipal organization or by ten (10) persons, firms, corporations or associations, or ten (10) complainants of all or any of the aforementioned classes, or by any public utility, that any of the rates, tolls, charges or schedules or any joint rate or rates in which such petitioner is directly interested are in any respect unreasonable or unjustly discriminatory, or that any regulation, measurement, practice or act whatsoever affecting or relating to the service of any public utility, or any

service in connection therewith, is in any respect unreasonable, unsafe, insufficient or unjustly discriminatory, *or that any service is inadequate or can not be obtained,* the commission shall proceed, with or without notice, to make such investigation as it may deem necessary or convenient. But no order affecting said rates, tolls, charges, schedules, regulations, measurements, practice or act, complained of, shall be entered by the commission without a formal public hearing.
(Emphasis added.)

Additionally, individual customers may bring complaints to the IURC pursuant to IND.CODE 8–1–2–34.5 which reads as follows:

(a) The Commission shall establish reasonable rules and regulations to govern the relations between public utilities and any or all classes of their customers. Those rules and regulations shall cover the following subjects:
(1) *extension of service;*
(2) extension of credit;
(3) deposits, including interest thereon;
(4) billing procedures;

In *Indiana Forge*, Indiana Forge sought declaratory, injunctive, and monetary relief from the gas utility which proposed to curtail Indiana Forge's use of natural gas. We held that Indiana Forge, even though it was an individual complainant and may not have been able to find nine (9) other customers to join in a complaint as prescribed by § 54, was nevertheless required to file a complaint with the IURC under I.C. 8-1-2-54 to challenge the gas company's action. Because Indiana Forge failed to file such a complaint, we held the trial court had not obtained jurisdiction. *Id.*

In *Indiana Bell*, 373 N.E.2d 344, we held that the utility commission's exclusive jurisdiction over the plaintiff's claim of discrimination in the application of Indiana Bell's tariff approved by the Commission was not divested by the plaintiff's prayer for damages made as part of the claim. Thus, we held that, even though the Commission had no authority to render a money judgment, any award of damages to be afforded under state law must be preceded by a determination by the Commission that the complained-of conduct or act was unlawful. *Id.* We also noted that the court of appeals has exclusive jurisdiction for the judicial review of all Commission decisions pursuant to IND.CODE 8-1-3. *Id.*

■ We hold that Haggard has failed to exhaust his administrative remedies. The only action Haggard took with the IURC was to write his letter of October 12, 1987 complaining of PSI's denial of service under § 3.2 of its tariff. The IURC Consumer Affairs Division declined to undertake any investigation or grant Haggard any relief. Even if Haggard's letter of October 12, 1987, were to constitute a complaint under I.C. 8-1-2-34.5 (see footnote 3), he failed to seek any review of the Commission's action on the letter as provided under that statute. Therefore, we hold that Hag-

gard failed to exhaust his administrative remedies with the IURC because he failed to 1) file a formal complaint pursuant to I.C. 8-1-2-54, or 2) he failed to seek review of the IURC's response to his October 12, 1987 letter pursuant to I.C. 8-1-2-34.5.

■ Haggard argues that he was excused from the requirement to exhaust his administrative remedies under the doctrine of futility. The general rule that courts have no jurisdiction to grant relief until a party exhausts his available administrative remedies must not be applied in a mechanical fashion. *Northside Sanitary Landfill, Inc. v. Indiana Environmental Management Bd.* (1984), Ind.App., 458 N.E.2d 277. Thus, under certain extraordinary circumstances strict compliance with the rule is not required. *Id.* One exception includes those situations where compliance would be futile. *Id.* We have found futility to exist where the administrative agency involved was powerless to effect a remedy. *Ahles v. Orr* (1983), Ind.App., 456 N.E.2d 425.

In the present case, Haggard has not asserted that the IURC could not have ordered PSI to provide Haggard with electrical service for his mobile home. Therefore, we hold that the futility exception does not apply and Haggard's failure to exhaust his administrative remedies with the IURC barred the trial court from obtaining subject matter jurisdiction.

Moreover, even had Haggard exhausted his remedies with the IURC or been excused from doing so, the trial court still would not have obtained jurisdiction to hear Haggard's claims based on state law. As noted above, in *Indiana Bell*, 373 N.E.2d 344, the court held that before the plaintiffs could bring their state law claim for damages against the utility they would have to obtain a favorable ruling from the Commission. If a favorable ruling was not forthcoming from the Commission, the

(5) termination of service;
(6) complaints; and
(7) information and notice to customers of their rights under the rules.

(b) Notwithstanding IC 8-1-2-54, the commission may investigate and enter orders on complaints filed by individual customers arising under this section. The commission may

establish an appeals division to act on its own behalf regarding individual customer · complaints. The decision of the division shall be binding on all parties to the complaint. The commission shall review decisions of the appeals division upon timely request by an affected party.
(Emphasis added.)

plaintiff must then appeal to the Indiana Court of Appeals which has exclusive jurisdiction for the judicial review of the Commission's decisions pursuant to I.C. 8-1-3-1 which provides:

> Any person, firm, association, corporation, city, town, or public utility adversely affected by any final decision, ruling, or order of the commission may, within thirty (30) days from the date of entry of such decision, ruling, or order, appeal to the court of appeals of Indiana for errors of law under the same terms and conditions as govern appeals in ordinary civil actions, ....

This statutory remedy is, strictly speaking, not an appeal, but is a judicial review by the court of appeals, which is the court of exclusive original jurisdiction in cases challenging any final decision, ruling, or order of the Public Service Commission [now the IURC]. *Sizemore v. Public Service Com'n of Indiana* (1960), 240 Ind. 513, 167 N.E.2d 343. Because Indiana's legislature established this statutory procedure, Indiana trial courts now lack subject matter jurisdiction over those disputes which fall within the ambit of I.C. 8-1-3. *Haste v. Indianapolis Power & Light Co.* (1978), 178 Ind.App. 394, 382 N.E.2d 989. In *Haste*, the appellants opted to bring an action for damages against the electric company in the trial court. We held that the trial court lacked subject matter jurisdiction to hear the case as the Court of Appeals has exclusive jurisdiction over the judicial review of actions of the Public Service Commission [now IURC]. *Id.*

Even had Haggard exhausted his administrative remedies, he would first have had to seek judicial review of the IURC's decision in the matter in the Court of Appeals and possibly the Indiana Supreme Court. Only then would the trial court obtain subject matter jurisdiction to hear Haggard's claims against PSI based on state law. Clearly, Haggard's October 12, 1987 letter to the IURC was woefully insufficient to satisfy the requirement that administrative remedies be exhausted or to otherwise confer subject matter jurisdiction upon the trial court.

Based on the above, we hold the trial court committed no error in granting summary judgment in favor of PSI.

Judgment affirmed.

BAKER, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

Notwithstanding some case law from other jurisdictions to the contrary, the conduct of PSI in the matter before us was "under color of state law."

PSI's tariff was not gratuitously filed with IURC. It was required to be filed before it could have force and effect. I.C. 8-1-2-38 (Burns Code Ed.1988); 170 IAC 4-1-29 (1988). The tariff is subject to review, modification, approval or denial by IURC. When filed, and when the utility, as here, conducts its activities pursuant to the tariff, such conduct is under color of state law.[1]

In *Kadlec v. Illinois Bell Telephone Co.* (1969, 7th Cir.) 407 F.2d 624, *cert. denied*, 396 U.S. 846, 90 S.Ct. 90, 24 L.Ed.2d 95, cited by the majority, termination of telephone service was involved. There, the only apparent state connection with the activity rested in the fact that the utility filed its regulations with the state authorities. The court acknowledged that the utility might operate under color of state law where "greater state involvement or control" exists. *Id.* at 627. Judge Kerner's separate concurrence in *Kadlec* is even more to the point in observing that "color of state law" will be found where the utility "is subject to close regulation by a statutorily-created body...." *Id.* at 628 (Kerner, J., concurring). In Indiana there is a great degree of involvement and control by the IURC with reference to the rendering of utility service to captive consumers.

With regard to the issue of exhaustion of administrative remedies, the majority finds

---

1. It has been held that when an entity, such as a utility or public carrier which is closely regulated by the state agency, does not comply with the provisions of an approved tariff, such constitutes a violation of an order of the commission. *State ex rel. Evansville City Coach Lines v. Rawlings* (1951) 229 Ind. 552, 99 N.E.2d 597.

persuasive significance in the fact that Haggard "failed to seek any review of the Commission's action on [his] letter ... pursuant to I.C. 8–1–2–34.5." (At 691).

It is clear that the Commission had made its determination with reference to the dispute. This position was unmistakably set forth in the October 27, 1987 letter from the Commission. Undoubtedly, any further efforts by Haggard to obtain a reversal of that position would have been futile. A party is not required to pursue further administrative avenues under such circumstances. *City of Lake Station v. State ex rel. Moore Real Estate, Inc.* (1990) Ind., 558 N.E.2d 824; *see* Wright, *Administrative Law, Survey of Recent Developments in Indiana Law,* 18 Ind.L.Rev. 37 at 42 (1985).

Although I.C. 8–1–2–34.5(b) (Burns Code Ed.1988) authorizes the Commission to establish an appeals division, it appears that the IURC has not done so. *See* 170 IAC 4–1–17 (1988). Accordingly, Haggard, having received the IURC rejection letter of October 27, 1987, had no further remedy available to him within the administrative process.

I would reverse and remand for further proceedings.